FILED
United States Court of Appeals
Tenth Circuit

October 29, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

SUZANNE R. HEER, an individual,

Plaintiff - Appellant,

v.

COSTCO WHOLESALE
CORPORATION; RUBBERMAID, INC.;
TRICAM INDUSTRIES, INC.,

Defendants - Appellees.

No. 14-2009
(D.C. No. 1:12-CV-01059-RB-KBM)
(D. New Mexico)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE,** Chief Judge, and **LUCERO** and **McHUGH**, Circuit Judges.

This appeal arises from a products liability suit brought by Suzanne Heer against

Costco Wholesale Corporation, Rubbermaid, Inc., and Tricam Industries, Inc.

(collectively, Defendants). Ms. Heer seeks damages for injuries she sustained while using

a Rubbermaid step stool that she purchased at Costco and that Tricam Industries designed

and manufactured. On appeal, Ms. Heer challenges two orders of the district court. First,

she claims the district court applied the wrong legal standard and abused its discretion by

granting Defendants' motion in limine to exclude the testimony of Ms. Heer's expert

witness. Second, Ms. Heer contends the district erred by granting Defendant's motion for

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

summary judgment on the basis that Ms. Heer could not show the step stool was defective without the excluded expert testimony. We affirm the district court on both issues.

## I. BACKGROUND

In reviewing a grant of summary judgment, we "tak[e] the facts and the reasonable inferences to be drawn from them in the light most favorable to the nonmoving party." *Justice v. Crown Cork & Seal Co.*, 527 F.3d 1080, 1085 (10th Cir. 2008) (internal quotation marks omitted). We therefore recite the facts of this case in the light most favorable to Ms. Heer.

### A. *Factual History*

In 2011, Ms. Heer purchased a Rubbermaid TR-3HB-RM Step Stool (the step stool) from Costco. Rubbermaid had licensed its name to Tricam Industries, which manufactured and designed the step stool. The step stool had passed all design tests, and its design met the applicable requirements of the American National Standards Institute (ANSI). Between the date she purchased it and the date of the accident, Ms. Heer used the step stool approximately fifteen times without incident and never noted any instability. Ms. Heer had also read and understood the step stool's warnings and instructions prior to use.

Ten months after purchasing the step stool, Ms. Heer decided to use it to adjust an overhead vent in her home. Ms. Heer, who is five feet, two inches tall and weighed 155 pounds at the time, stood with both feet evenly spaced on the second of the step stool's three steps while holding onto the stool's handle with her left hand and reaching upward

2

toward the vent with her right hand. The vent remained out of Ms. Heer's reach. While reaching up and looking toward the vent, Ms. Heer suddenly fell, hitting the floor to her left. The step stool also fell to the left, landing in open position on its side. Ms. Heer noticed at that time that the step stool's front left leg had bent inward. As a result of the fall, Ms. Heer broke her arm in two places. She also sustained a bruise and scratch on the inside of her thigh, which were not caused by her impact with the ground.

### B. Procedural History

Ms. Heer filed this lawsuit against Defendants in the Federal District Court for the District of New Mexico. Ms. Heer brought claims of breach of express warranty, breach of implied warranty, and negligence against Tricam Industries; violation of the New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-1 to -26 against Tricam Industries and Rubbermaid; and strict products liability against all Defendants as a result of an alleged defect in the step stool's design. Specifically, Ms. Heer alleged a defect in the leg of the step stool caused it to "suddenly and unexpectedly" fold under her as she reached for the vent, causing her to "fall and sustain serious injuries." All of Ms. Heer's claims are brought under New Mexico law.

As part of her case against Defendants, Ms. Heer intended to introduce the expert testimony of Bradley J. Stolz to establish the cause of the fall. Mr. Stolz has a Bachelor of Science degree in engineering with a mechanical specialty and a Master of Science degree in mechanical engineering. He is registered as a professional engineer in Colorado

3

and had testified or given deposition testimony in three cases prior to the present action, none of which involved ladder accidents.[1]

Mr. Stolz submitted an expert report to the court in which he provided the results of his "laboratory examination of the step stool." The laboratory examination consisted solely of Mr. Stolz's observations and measurements of the step stool. Based on his examination and his review of Ms. Heer's deposition testimony, Mr. Stolz concluded with "a reasonable degree of engineering certainty" that Ms. Heer's fall was not the result of misuse or failure to follow warnings, but instead was due to a defect in the design of the step stool's leg. Specifically, Mr. Stolz's report explained that "[t]he collapse occurred at a weakened section in the step stool" where a hole had been "punched into the tubular steel of the legs at rivet locations." This hole weakened that section of the step stool, causing "[t]he lower portion of the front rail [to] fail[] in a lateral manner." Mr. Stolz opined that it would have been "economically and technologically feasible" to include a lateral support mechanism in the design of the step stool, and that had the stool been manufactured with the lateral support, "the subject failure would not have occurred." Absent from Mr. Stolz's report was any discussion of tests, calculations, or industry standards, or the application of engineering principles supporting his theory that a defect caused Ms. Heer's fall.

Mr. Stolz's report noted a pending lawsuit, the *Ensley*[2] case, which Mr. Stolz claimed involved an accident caused by "the unexpected collapse of this model step-

---

[1] All three cases in which Mr. Stolz had presented expert testimony involved motor vehicle accidents.

4

stool." Mr. Stolz's review of the *Ensley* case consisted solely of a visual inspection of the photographs from that case, and he made no attempt to demonstrate that the circumstances surrounding the *Ensley* accident were in any way similar to the circumstances of Ms. Heer's fall.

Defendants moved to exclude Mr. Stolz's testimony on the basis that it did not meet the requirements of Federal Rule of Evidence 702 because he was not qualified and his methodologies were not reliable. In addition, Defendants moved for summary judgment on the ground that, in the absence of Mr. Stolz's expert testimony, Ms. Heer could not establish a design defect. Ms. Heer opposed the motions, asserting that Mr. Stolz had abundant experience investigating ladder failures as a contractor for a workers' compensation insurer and that his testimony was reliable because it was "based on general engineering principles and concepts." She also argued summary judgment was inappropriate because, even if the court excluded Mr. Stolz's testimony, the circumstantial evidence supported an inference that the step stool was defective. Ms. Heer included with her opposition to Defendants' motion for summary judgment a request that the court take judicial notice of the *Ensley* lawsuit as evidence supporting an inference of a defect.

The district court granted Defendants' motion to exclude Mr. Stolz's testimony. The court concluded that although Mr. Stolz was qualified to offer expert testimony based on his education and experience, his opinions were not reliable. The court

---

[2]*Ensley v. Costco Wholesale Corp.*, No. 12-2-01837 (Wash. Sup. Ct., Skagit Cnty. filed Sept. 25 2012).

identified several deficiencies in Mr. Stolz's methodology, explaining that: (1) his testimony was not scientific and did not "draw on any specialized knowledge or utilize any discernable methodology"; (2) he did not test his hypothesis of the cause of the fall or his alternative design for the stool; (3) he relied only on a visual inspection of the step stool, some measurements, and a review of Ms. Heer's deposition testimony; (4) his report did not refer to the ANSI safety standards for ladders; and (5) he failed to eliminate as a plausible cause for the step stool's collapse that Ms. Heer lost her balance while reaching for the vent, causing her to fall and to collide with the step stool as she landed. In ruling to exclude Mr. Stolz's testimony, the district court contrasted Mr. Stolz's methodology with that of the defense expert, Dr. Mack Quan, to demonstrate Mr. Stolz could have tested his theory, but he did not. The district court explained Dr. Quan tested not only his own theory, but also that of Mr. Stolz, and his tests demonstrated the damage to the step stool could not have occurred in the manner alleged by Mr. Stolz. The district court further compared the two experts' methodologies to demonstrate Mr. Stolz failed to eliminate other plausible explanations for the accident.

The district court found Mr. Stolz's report and proposed testimony "completely conclusory." Because his testimony was neither "grounded on sufficient facts or data" nor the product of "reliable principles and methods," and because there was no indication Mr. Stolz "applied those principles and methods reliably to the facts of this case," the district court concluded his testimony did not satisfy the reliability requirement of Rule 702. It therefore granted Defendants' motion to exclude Mr. Stolz's testimony.

6

With respect to their motion for summary judgment, Defendants claimed Ms. Heer had failed to produce evidence showing a defect in the step stool's design. Ms. Heer disagreed, arguing that even if the court excluded Mr. Stolz's testimony, the circumstantial evidence could support a finding that the step stool was defective. In support of this argument, Ms. Heer referred the court to two pending lawsuits—the *Ensley* and *Nickel*[3] cases—which Ms. Heer alleged involved injuries "arising out of use of the same model of step-stool at issue here." But in arguing her accident was similar to the *Ensley* and *Nickel* cases, Ms. Heer relied solely on Mr. Stolz's report, which the district court had excluded.

The district court held the circumstantial evidence did not reasonably support an inference that a defect in the step stool's design caused Ms. Heer's accident. Addressing the *Ensley* and *Nickel* cases, the district court explained evidence of those cases would be inadmissible unless Ms. Heer could show the underlying accidents were "substantially similar" to her own accident. The district court ruled Ms. Heer had not satisfied this burden. Having excluded evidence of the *Ensley* and *Nickel* cases, as well as Mr. Stolz's expert testimony, the district court held Ms. Heer had failed to establish the existence of a defect—an essential element of her claim. The court therefore granted Defendants' motion for summary judgment and entered a final order dismissing this case with prejudice.

---

[3]Neither party has provided a citation for the *Nickel* litigation, nor was a citation included in any of the relevant filings in the district court. The record is also inconsistent in the spelling of this case, referring to it in some instances as *Nickel* and in others as *Nickol*. We refer to the case as *Nickel* throughout this opinion.

Ms. Heer filed a timely notice of appeal. We exercise our jurisdiction under 28 U.S.C. §§ 1291 and 1332.

## II. DISCUSSION

Ms. Heer raises two issues on appeal. First, she argues the district court abused its discretion in excluding Mr. Stolz's testimony. Second, she contends that even if the district court properly excluded Mr. Stolz's testimony, summary judgment was inappropriate because the circumstantial evidence created a genuine issue of material fact regarding the cause of her fall. We affirm the district court on both issues.

### A. *Exclusion of Expert Testimony*

Ms. Heer argues that, in granting Defendants' motion to exclude Mr. Stolz's testimony, the district court applied the wrong legal standard by failing to consider the evidence of the *Ensley* case and abused its discretion in determining Mr. Stolz's testimony was not reliable. On appeal of a district court's decision to exclude expert testimony, we review de novo "whether the district court employed the proper legal standard and performed its gatekeeper role." *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (internal quotation marks omitted). But we review for abuse of discretion "the manner in which the district court performs this gatekeeping role" and will not disturb the district court's ruling unless "it is arbitrary, capricious, whimsical or manifestly unreasonable, or we are convinced that the district court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Id.* (internal quotation marks omitted).

8

1. Sufficiency of the District Court Record

Ms. Heer first argues the district court did not fulfill its gatekeeper function under Rule of Evidence 702 because it failed to make specific findings on the record regarding Mr. Stolz's investigation of the *Ensley* case. Ms. Heer characterizes this alleged error as the application of an incorrect legal standard and thus argues we should review the district court's decision de novo. In fact, Ms. Heer's challenge goes to the manner in which the district court fulfilled its gatekeeper role, not the legal standard it applied. *See Nacchio*, 555 F.3d at 1241 ("Although [defendant] argues that the district court abdicated its gatekeeping function, his argument really concerns the manner in which the district court fulfilled this role, e.g., allegedly failing to ensure the creation of a sufficiently developed record . . . ."). Because the record reflects the district court's application of the *Daubert* framework, which is the proper legal standard, we review for an abuse of discretion the manner in which the district court fulfilled its role as gatekeeper.

As part of their gatekeeper function under Rule 702, district courts must create "a sufficiently developed record," including "specific fact findings concerning their application of rule 702 and *Daubert*." *Goebel v. Denver & Rio Grande W.R.R.*, 215 F.3d 1083, 1088 (10th Cir. 2000) (internal quotation marks omitted). Without such specific fact finding and thorough discussion on the record, "it is impossible on appeal to determine whether the district court carefully and meticulously review[ed] the proffered scientific evidence or simply made an off-the-cuff decision to admit the expert testimony." *Id.* (alterations in original) (internal quotation marks omitted). In *Goebel*, the district court admitted the testimony of plaintiff's expert witness over defendant's

9

objection but made no findings on the record as to the expert's qualifications or the relevance or reliability of the expert's testimony. *Id.* at 1086–87. On appeal, we held that where the record contained no indication "the district court ever conducted any form of *Daubert* analysis whatsoever," the district court had failed to perform its gatekeeper function under Rule 702. *Id* at 1088. Despite the district court's indication that it had "fully considered the matter," we held "this single statement [was] insufficient as a basis for judicial review." *Id.* We therefore reversed the district court's admission of the expert testimony and remanded for a new trial. *Id* at 1089.

Unlike the record in *Goebel*, the record in this case is replete with the district court's analysis and careful application of the Rule 702 and *Daubert* factors. In a ten-page memorandum decision, the district court thoroughly evaluated Mr. Stolz's report, applied the *Daubert* factors to his methodology, and provided abundant support for its decision to exclude his testimony. The mere fact the district court did not mention Mr. Stolz's minimal evaluation of the *Ensley* case—which consisted of conclusory statements based solely on Mr. Stolz's review of the photographs from the *Ensley* case—is not enough to show it failed to sufficiently develop the record. This is particularly true where Defendants submitted their motion to exclude Mr. Stolz's testimony simultaneously with their motion for summary judgment, the district court issued companion orders for the two motions, and the court explicitly ruled in its summary judgment order that evidence of the *Ensley* accident was inadmissible because Ms. Heer failed to show it was substantially similar to her accident. Under these circumstances, we may properly construe the district court's failure to address the *Ensley* case in the order excluding Mr.

10

Stolz's testimony as an implicit denial of Ms. Heer's argument that the *Ensley* case provided support for Mr. Stolz's opinion, and that it was denied for the same reason articulated in the order granting summary judgment. We therefore conclude the district court sufficiently developed the record and did not abuse its discretion in failing to discuss the *Ensley* case in the order excluding Mr. Stolz's testimony.

2. Reliability of Mr. Stolz's Testimony

Having determined the record is sufficiently developed, we next review Ms. Heer's contention the district court abused its discretion in ruling Mr. Stolz's testimony was not reliable. Rule 702 of the Federal Rules of Evidence permits district courts to admit the testimony of an expert so long as the expert is qualified and the expert's opinion is both relevant and reliable. *Daubert v. Merrell Dow Pharm.*, *Inc*., 509 U.S. 579, 589 (1993) ("The trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."). Specifically, Rule 702 permits expert testimony by a "witness who is qualified" if the expert's testimony is helpful to the jury and is reliable in that it is "based on sufficient facts or data; . . . is the product of reliable principles and methods; and . . . the expert has reliably applied the principles and methods to the facts of the case." Under Rule 702, "[t]he proponent of expert testimony bears the burden of showing" that its proposed expert satisfies these requirements, and district courts have considerable latitude in determining whether the proponent has satisfied this burden. *Nacchio*, 555 F.3d at 1241; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) ("[T]he trial judge must have considerable leeway in deciding

11

in a particular case how to go about determining whether particular expert testimony is reliable.").

Here, the district court excluded Mr. Stolz's testimony, concluding that although he was qualified to testify as an expert, his testimony was not reliable. Ms. Heer argues the district court abused its discretion in reaching this conclusion. In particular, she contends Mr. Stolz employed a valid scientific methodology by applying basic mechanical engineering principles to his review of Ms. Heer's deposition testimony, his observations of the step stool's design, his analysis of other possible causes of the fall, and his review of photographs from the *Ensley* case. She therefore requests we reverse the district court's exclusion of Mr. Stolz's testimony. We decline to do so.

As Ms. Heer correctly notes, exclusion of expert testimony under Rule 702 "is the exception rather than the rule." Fed. R. Evid. 702 advisory committee notes (2000). But a district court may properly exclude such testimony when the opinion evidence "is connected to existing data only by the *ipse dixit* of the expert" such that "there is simply too great an analytical gap between the data and the opinion offered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).[4] Mr. Stolz's report was plagued by just such an analytical gap. The report provided no scientific basis for its conclusion that a defect in the step stool's design caused Ms. Heer's fall. Mr. Stolz made no attempt to test his theory, nor did he make any calculations, apply any engineering principles to his causation theory, discuss any industry standards, or mention any scientific authority that

---

[4]"Ipse dixit" is Latin for "He, himself, said it," and is used to identify an unsupported statement that rests solely on the authority of the person who makes it. Black's Law Dictionary 905 (9th ed. 2009).

12

supported his theory. Without scientific or technical support for Mr. Stolz's theory, the district court was left with only Mr. Stolz's conclusory opinion that the step stool was defective. Such an unsubstantiated basis is insufficient under Rule 702, and the district court was therefore within its discretion in determining Mr. Stolz's opinion was not reliable. *Cf. Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 894–96 (7th Cir. 2011) (affirming a district court's exclusion of expert testimony in a ladder accident case where the expert "made no attempt to test his hypothesis," provided no evidence of "consensus in the engineering community" that his theory was accurate, and failed to show that his alternative designs were the product of reliable principles and methods); *Beaudette v. Louisville Ladder, Inc.* 462 F.3d 22, 25–26 (1st Cir. 2006) (affirming a district court's exclusion of expert testimony in a ladder accident case because the expert failed to provide "a sufficient basis for his expert opinion").

Despite these apparent shortcomings in Mr. Stolz's methodology, Ms. Heer argues the district court abused its discretion in excluding his testimony because it put undue weight on Mr. Stolz's failure to test his theory and failure to discuss whether his theory comported with ANSI standards. We disagree. In *Daubert*, the United States Supreme Court explained the importance of testing a scientific theory to assess its reliability: "[A] key question to be answered in determining whether a theory or technique is scientific knowledge that will assist the trier of fact will be whether it can be (and has been) tested." 509 U.S. at 593. Although we have held testing is not always required to satisfy the reliability threshold of Rule 702, it is particularly important when a proposed expert

13

relies on novel theories or where the basis for the expert's opinion is subject to debate. *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1235–36 (10th Cir. 2004).

In this case, Mr. Stolz claims he applied generally accepted scientific principles to reach the conclusion that a section of tubular steel through which a hole has been drilled is not as strong as a section of tubular steel that is intact. But he then leaped to the conclusion that the stool was rendered defective as a result of the hole, and this defect caused it to collapse during Ms. Heer's normal use of it. Mr. Stolz's opinion as to causation is unsupported by anything other than speculation, and it ignores completely the fact the step stool design complied with applicable industry standards. And unlike cases in which the expert's opinion relies on established scientific principles, *see id.*, Mr. Stolz failed to explain the scientific principles upon which his theory of causation was based. Instead, Mr. Stolz advanced a theory which appeared novel in that it contradicted the outcome of standard industry tests. In cases such as this one where the expert's theories are not grounded in well-established scientific principles, "the importance of testing as a factor in determining reliability [is] at its highest." *Id.* at 1236. The district court considered Mr. Stolz's failure to test his theory as one of several factors tending to show his testimony was unreliable. Such consideration was not improper.

The same is true of Mr. Stolz's failure to consider industry standards. Federal courts have consistently held that compliance with industry standards is relevant to a reliability determination under Rule 702. *See, e.g.*, *Sappington v. Skyjack, Inc.*, 512 F.3d 440, 454 (8th Cir. 2008) (considering important to a reliability determination the fact the expert opinion "[took] the relevant ANSI standards into account"). The district court

14

therefore did not abuse its discretion by considering Mr. Stolz's failure to address the ANSI standards as one factor in determining his testimony was unreliable.

Ms. Heer next contends the district court abused its discretion in improperly weighing Mr. Stolz's testimony against that of the defense expert, Dr. Quan. Although we agree this issue is a closer question, we are convinced the district court acted within its discretion under the facts of this case. At the Rule 702 gatekeeping stage, district courts must avoid weighing the credibility or persuasiveness of the competing experts' ultimate conclusions. *See United States v. Oliver*, 278 F.3d 1035, 1043 (10th Cir. 2001) ("[I]t is solely within the province of the jury to weigh . . . expert testimony." (Internal quotation marks omitted)). But that is not what happened here. As part of its reliability discussion, the district court contrasted Mr. Stolz's *methodology* with that of Dr. Quan. Specifically, the district court used the fact Dr. Quan tested not only his own theory, but also Mr. Stolz's theory, to illustrate testing was feasible in this case.

The court also compared Mr. Stolz's and Dr. Quan's methodologies to illustrate Mr. Stolz's failure to consider other plausible explanations for the damage to the stool— specifically, that Ms. Heer tipped the stool over and collided with it as she fell. To the extent some of the district court's comparisons of Mr. Stolz's and Dr. Quan's reports may have improperly implicated an assessment of plausibility,[5] the district court provided

---

[5]Although the district court was required to consider plausibility in its ultimate determination of this case, *see infra* Part B.1, the court should have reserved its consideration of Dr. Quan's conclusion that Ms. Heer's theory was implausible for its assessment of whether the circumstantial evidence was sufficient to survive summary judgment, instead of in its order excluding Mr. Stolz's testimony. Under the circumstances in this case, however, this misplaced analysis is understandable:

15

more than enough proper support for its determination that Mr. Stolz's testimony was not reliable.[6]

In sum, we conclude the district court acted within its discretion in excluding Mr. Stolz's testimony as unreliable. The district court properly fulfilled its gatekeeper role and sufficiently developed the record. The district court also undertook a thorough *Daubert* evaluation and found Mr. Stolz's testimony lacking due to its failure to provide a reliable scientific or technical basis for its conclusions. As part of this evaluation, the district court could properly consider Mr. Stolz's failure to test his theory and his failure to consider industry standards. And although the district court could have been more cautious in its comparison of Mr. Stolz's and Dr. Quan's reports, the thrust of that comparison was to contrast the methodologies of the two experts and to show that testing was feasible. We therefore affirm the district court's decision to exclude Mr. Stolz's testimony.

---

Defendants submitted their motion to exclude Mr. Stolz's testimony and motion for summary judgment together, and the district court issued its rulings on the two motions at essentially the same time. And because the district court provided more than enough proper support for its conclusion Mr. Stolz's testimony was not reliable, its premature discussion of the plausibility of Ms. Heer's causation theory does not undermine our confidence in the district court's decision to exclude Mr. Stolz's testimony as unreliable.

[6]We also reject Ms. Heer's argument that the district court engaged in impermissible fact finding by including in its decision that Ms. Heer "fell from a step stool." Contrary to Ms. Heer's suggestion, the district court did not comment on the cause of the fall. Regardless of whether the step stool collapsed due to a design defect or it tipped over when Ms. Heer leaned toward the vent, the result was that Ms. Heer fell from the stool and hit the ground, breaking her arm.

## B. Summary Judgment

Ms. Heer argues that even if the district court did not abuse its discretion in excluding Mr. Stolz's testimony, it erred in granting Defendants' motion for summary judgment. We review the district court's grant of summary judgment de novo. *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1279 (10th Cir. 2013). Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of "identify[ing] portions of the record that demonstrate the absence of a genuine issue of material fact." *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 762 F.3d 1114, 1118 (10th Cir. 2014).

If that burden is met, the nonmoving party then has the burden to "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which [that party] carries the burden of proof." *Travis v. Park City Mun. Corp.*, 565 F.3d 1252, 1258 (10th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). We conclude Ms. Heer has not satisfied her burden of showing a genuine issue of material fact concerning whether the step stool was defective.

### 1. Circumstantial Evidence of a Defect

Under New Mexico products liability law, parties may use circumstantial evidence to prove the presence of a defect and to establish causation. *Martin v. Unit Rig & Equip.*

*Co.*, 715 F.2d 1434, 1439 (10th Cir. 1983). But to do so, the circumstantial evidence must support a reasonable inference that a defect caused the alleged injury and that circumstantial evidence "must be capable of convincing a rational juror that the conclusion [of a defect] is more probable than any other alternative." *Andrus v. Gas Co. of N.M.,* 798 P.2d 194, 197 (N.M. Ct. App. 1990).

Even when viewed in the light most favorable to Ms. Heer, the circumstantial evidence in this case does not satisfy this requirement. Without Mr. Stolz's expert testimony, the evidence presented to the district court at summary judgment showed the step stool had passed all standard industry performance tests, Ms. Heer had used the step stool fifteen times prior to the accident without incident, Ms. Heer had been reaching upward toward the vent, which was still out of reach when she fell, and Ms. Heer believed she hit the ladder before hitting the ground. In addition, Defendants' expert offered uncontroverted testimony that the step stool was structurally sound and, despite efforts to replicate the accident, it did not break in the manner Ms. Heer alleged.

We agree with the district court that the circumstantial evidence does not support a reasonable inference that the step stool was defective, but instead more strongly supports Defendants' theory that Ms. Heer tipped the stool over while leaning to reach the vent and collided with it as she fell. Accordingly, the district court correctly concluded the circumstantial evidence was not capable of convincing a rational juror that a defect in the design of the step stool was more probable than any other alternative. Because Ms. Heer failed to satisfy her burden of showing a genuine issue as to an essential element of her

claims—a defect—the district court correctly granted Defendants' motion for summary judgment.

2. Request for Judicial Notice and Evidence of Other Accidents

Ms. Heer also claims the district court erred in failing to rule separately on her request for judicial notice of the *Ensley* case prior to ruling on Defendants' summary judgment motion. In her request for judicial notice, Ms. Heer argued the *Ensley* case was "directly relevant to this matter because it alleges personal injuries arising out of use of the same step-stool at issue in this matter." Although the district court did not rule separately on Ms. Heer's request for judicial notice, it discussed both the *Ensley* case and another allegedly similar lawsuit, the *Nickel* case, in its summary judgment ruling. As part of that decision, the district court explicitly rejected Ms. Heer's request to consider the *Ensley* and *Nickels* cases, ruling instead that Ms. Heer had not satisfied her burden of demonstrating they were substantially similar to her accident.

In ruling that evidence of the *Ensley* and *Nickel* incidents was inadmissible and could not form the basis of Ms. Heer's opposition to Defendants' motion for summary judgment, the district court implicitly denied Ms. Heer's request for judicial notice of the *Ensley* case. *See Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1116 (10th Cir. 2004) ("[T]he district court's failure to address [a party's] arguments may be properly construed as an implicit denial of those arguments."). Where the district court's implicit rejection of Ms. Heer's request for judicial notice was readily apparent from its summary judgment ruling, we conclude the district court did not err in failing to rule separately on that request.

19

Ms. Heer also contends the district court erred in requiring the *Ensley* and *Nickel* incidents to be substantially similar to her accident. We disagree. Although evidence of other accidents is admissible in products liability cases, the admissibility of such evidence hinges on whether "the other incidents are substantially similar to the incident in question." *U.S. Aviation Underwriters, Inc. v. Pilatus Bus. Aircraft, Ltd.*, 582 F.3d 1131, 1147–48 (10th Cir. 2009) (internal quotation marks omitted). This rule applies to admissibility at trial as well as at the summary judgment stage. *See Johnson v. Weld Cnty.*, 594 F.3d 1202, 1210 (10th Cir. 2010) ("[Although] the *form* of evidence produced by a nonmoving party at summary judgment may not need to be admissible at trial, the *content or substance* of the evidence must be admissible." (internal quotation marks omitted)).

Under the substantially similar test, "[t]he degree of similarity required varies depending on how the evidence is used." *U.S. Aviation Underwriters*, 582 F.3d at 1148. If the proponent intends to use the evidence to prove the existence of a dangerous condition such as a defect, the proponent must show "a high degree of similarity because it weighs directly on the ultimate issue to be decided by the jury." *Id.* If, on the other hand, the proponent submits the evidence "to prove notice or awareness of the potential defect," the requirement "is relaxed." *Id.* We review a district court's decision to admit or exclude evidence under this test for an abuse of discretion. *Id.* at 1147.

Here, Ms. Heer intended to introduce evidence of the *Ensley* and *Nickel* cases to prove the step stool was defective. She was therefore required to show a high degree of similarity between her accident and the accidents in the *Ensley* and *Nickel* cases.

20

Ms. Heer made no such showing. Apart from explaining that the *Ensley* and *Nickel* cases involved the same model Rubbermaid step stool, Ms. Heer presented no evidence that the circumstances surrounding the *Ensley* and *Nickel* accidents were similar to the circumstances of her accident. Thus, she failed to meet the requirements of the substantially similar test, and the district court was within its discretion in excluding this evidence from its analysis on summary judgment.[7]

For these reasons, we conclude the district court correctly granted Defendants' motion for summary judgment. Ms. Heer failed to demonstrate that circumstantial evidence supported an inference that a defect in the step stool was a more plausible cause of the accident than any other theory. The district court also correctly concluded that Ms. Heer failed to show that the *Ensley* and *Nickel* incidents were substantially similar to her own.[8] We therefore affirm the district court's summary judgment ruling.

---

[7]In its summary judgment ruling, the district court acknowledged it had previously granted Ms. Heer's motion to compel discovery regarding the *Nickel* incident, and that Defendants had not yet complied with that ruling. The district court entered summary judgment based on the information about the *Nickel* case then available, but alerted Ms. Heer she would have "the opportunity under Rule 60 to seek relief from this judgment" based on new information about *Nickel* subsequently disclosed. Ms. Heer did not seek relief under Rule 60, but instead, filed this appeal after the district court entered final judgment.

[8]We also reject Ms. Heer's arguments that the district court failed to consider seriously Dr. Quan's credibility issues and the possibility of foreseeable misuse. The only basis Ms. Heer provides for arguing Dr. Quan was not credible was the fact he did not know the measurements of Ms. Heer's condominium when he re-created the accident. But Ms. Heer fails to demonstrate how any difference in measurements would undermine Dr. Quan's test results.

Ms. Heer's foreseeable misuse argument to the district court included a single citation, *Smith ex rel. Smith v. Bryco Arms*, 33 P. 3d 638, 645–647 (N.M. Ct. App. 2001), and provided no explanation of how Dr. Quan's testing supported such a theory. It is

### III. CONCLUSION

For each of the reasons discussed above, we **AFFIRM** the district court's exclusion of Mr. Stolz's testimony under Federal Rule of Evidence 702 and the district court's grant of Defendants' motion for summary judgment. The district court acted within its discretion in ruling that Mr. Stolz's testimony was unreliable because he failed to connect his observations to his conclusions through testing, calculations, or a discussion of engineering principles or industry standards. The district court also correctly granted Defendants' motion for summary judgment because the circumstantial evidence did not support, as the most plausible theory, an inference that the step stool was defective.

ENTERED FOR THE COURT


Carolyn B. McHugh
Circuit Judge

---

therefore not surprising the district court did not address this inadequately briefed argument in its summary judgment decision, and we may "properly construe[]" this exclusion "as an implicit denial of [that] argument[]." *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1116 (10th Cir. 2004). We therefore reject Ms. Heer's claim the district court failed to consider her challenge to Dr. Quan's credibility and her foreseeable misuse argument.