
# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

TAMMY ENSLEY and RAYMOND ENSLEY, )
        Respondents, )

v. )

COSTCO WHOLESALE CORPORATION, a Washington corporation, NEWELL RUBBERMAID, INC., a Delaware corporation, )

        Defendants, )

and )

TRICAM INDUSTRIES, INC., a Minnesota corporation, )

        Appellant. )

No. 76052-1-I

DIVISION ONE

PUBLISHED OPINION

FILED: December 26, 2017

BECKER, J. — In this product liability action, a jury found that a construction defect in plaintiff's stepladder caused her to fall and sustain injury. Testimony by an expert in injury biomechanics was properly admitted to show that a weakness in the stepladder's leg caused it to collapse unexpectedly. Evidence that the stepladder's design conformed to safety standards did not negate evidence that this particular stepladder was defective in construction. Finding no error in the trial court's rulings, we affirm the verdict for the plaintiffs.

Tammy and Raymond Ensley, respondents, were working on a project in their garage on February 27, 2012. Tammy was standing on the second step of

a stepladder that she had purchased less than a year earlier. She was holding plastic sheeting while Raymond stapled the sheeting to the wall. Tammy suddenly fell to the ground and was injured. Tammy testified that the fall was "instantaneous. I face-planted." She did not know exactly what caused her to fall. According to Tammy and Raymond, the stepladder was positioned on the flat concrete surface of the garage floor before the fall and Tammy was not wobbling or otherwise unstable. The ladder was found with one of the front legs bent inward as shown in the photograph below.



The Ensleys brought this suit against several defendants under Washington's product liability act, chapter 7.72 RCW. The trial began in August 2016. The only remaining defendant at the end of the case was appellant Tricam Industries, Inc.

The stepladder was a Rubbermaid TR-3HB model. Tricam designed it and contracted for its manufacture. The legs were made from a single

2

continuous metal tube. Three steps were riveted to the two front legs of the ladder.

The Ensleys relied on expert testimony that the ladder was defective both in design and construction. Tricam's trial theory was that the stepladder's leg could not have snapped or bent under normal use because it met all design standards. Tricam contends the expert opinion to the contrary should have been excluded as speculative.

The expert witness who testified in support of the Ensleys' claim was mechanical engineer Wilson Hayes, a specialist in injury biomechanics. Hayes explained his methodology for analyzing the accident. He began by asking the question whether the stepladder broke and caused Tammy to fall, or whether Tammy fell and caused the stepladder to break. He examined four possible scenarios. Based on Tammy's location after the fall, the location of the stepladder after the fall, and the nature of Tammy's injuries, Hayes ruled out three scenarios that involved Tammy losing her balance and knocking the ladder over as she fell. Hayes concluded that the only plausible scenario was one in which one leg of the stepladder broke first and Tammy, in reaction to that event, fell forward with her feet caught between the platform and the second leg.

Hayes presented his opinion that the stepladder broke because it was defectively designed and manufactured. He observed that the leg broke where a hole had been punched so that a rivet could be inserted to attach a step. Punching holes in the tubular railings was "a design flaw at the outset," he said, because the holes concentrated the stresses at the point of insertion. In his

3

opinion, these stresses could be mitigated if the manufacturing process included a requirement for grinding down and smoothing the holes punched in the railing, a process known as deburring. Tricam's manufacturing process did not require deburring.

Hayes testified that "when you look at something that's as rough as the inside of that hole, it doesn't look like very good manufacturing practices." Later, the court (reading a juror's question) asked Hayes, "Does it increase a chance for cracks to occur if the hole was not deburred?" Hayes responded, "The short answer to that is yes." Hayes said his conclusion that this particular ladder broke and caused the fall was not affected by the design standards and tests showing that TR-3HB stepladders were generally capable of bearing considerable weight without failure.

Hayes testified that in the final step of his inquiry, he determined there were feasible and cost-effective design alterations already in use in products marketed by Tricam that would have eliminated the defect that caused Tammy's fall.

Tricam countered with testimony by mechanical engineer Mack Quan that the steel rails made the stepladder "inherently strong." Quan rejected Hayes' opinion that the leg of the ladder bent under Tammy's weight while it was in a stable position with all of its feet on the ground. In his opinion, that scenario for the fall was "physically impossible." Instead, the ladder must have already tipped before the toe bent inward. Quan discussed extensive testing that had been done on other stepladders of the same model. According to Quan, the tests

4

demonstrated that this model of stepladder met national design standards and was capable of bearing loads exceeding Tammy's weight without failing, even after the railings were intentionally punched with holes that were not smoothed down. Quan had also tested the unbroken leg of the Ensleys' stepladder and said that the ladder "had all the qualities it needs to be a safe type 3 stepstool." Quan conceded in cross-examination, however, that the rivet hole where the other leg broke would not be identical to the rivet holes punched out on the unbroken leg. "They're never going to be identical."

At several points in the proceedings, Tricam asked the court to rule that Hayes' testimony was too speculative to support a finding of a construction defect. The trial judge rejected this argument before, during, and after the trial. When denying Tricam's motion for a directed verdict, the judge commented that it was unusual to see two experts "so diametrically opposed, and yet so qualified."

The court gave the pattern jury instructions on construction and design defects, 6 Washington Practice: Washington Pattern Jury Instructions: Civil 110.01 and 110.02 (6th ed. 2012). The jury returned a verdict finding that the stepladder "was not reasonably safe in construction at the time the product left the Defendant's control." The jury did not find that the ladder was defectively designed. The jury awarded $435,461 in damages. Tricam seeks a new trial.

In Washington, ER 702 governs admissibility of expert testimony.

> Once the court is satisfied with a witness' expertise, the test for admissibility is whether the testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." ER 702; 5A K. Tegland, Wash. Prac. § 291 (1982); State v. Petrich, 101 Wn.2d 566, 575, 683 P.2d 173 (1984). The court should also consider whether the issue is of such a nature that an expert could

express "a reasonable probability rather than mere conjecture or speculation." 5A K. Tegland, at 36. In addition, when ruling on somewhat speculative testimony, the court should keep in mind the danger that the jury may be overly impressed with a witness possessing the aura of an expert. United States v. Fosher, 590 F.2d 381 (1st Cir. 1979).

Davidson v. Mun. of Metro. Seattle, 43 Wn. App. 569, 571-72, 719 P.2d 569, review denied, 106 Wn.2d 1009 (1986). Trial courts have broad discretion in determining the admissibility of expert testimony. Davidson, 43 Wn. App. at 575.

The jury instruction[1] stated two tests for finding a construction defect. The Ensleys could prove a construction defect by showing (1) that the ladder "deviated in some material way from the design specifications or performance

---

[1] A manufacturer has a duty to supply products that are reasonably safe in construction.

There are two tests for determining whether a product is not reasonably safe in construction. The plaintiff may prove that the product was not reasonably safe in construction using either of these two tests.

The first test is whether, when the product left the control of the manufacturer, the product deviated in some material way from the design specifications or performance standards of the manufacturer, or deviated in some material way from otherwise identical units in the same product line.

The second test is whether the product is unsafe to an extent beyond that which would be contemplated by the ordinary user. In determining what an ordinary user would reasonably expect, you should consider the following:

a. the relative cost of the product;

b. the seriousness of the potential harm from the claimed defect;

c. the cost and feasibility of eliminating or minimizing the risk; and

d. such other factors as the nature of the product and the claimed defect indicate are appropriate.

If you find that the product was not reasonably safe in construction and this was a proximate cause of the plaintiff's injury and damage, then the manufacturer is subject to liability.
Clerk's Papers at 35 (instruction 12).

standards of the manufacturer, or deviated in some material way from otherwise identical units in the same product line" or (2) that it was unsafe beyond what an ordinary user would reasonably expect.

The jury heard the deposition testimony of Dennis Simpson, a Tricam witness who designed the stepladder and oversaw its production. Simpson maintained that the manufacturing process for this model was intended to produce "identical" holes for each rail and each ladder. But Simpson admitted there was no requirement for deburring and "in most cases" deburring did not take place. And he could not say that the holes in the Ensley stepladder were checked during the manufacturing process to ensure they were identical.

Hayes' testimony about irregularities in the holes, together with Simpson's testimony that Tricam intended for the holes to be identical and Quan's testimony that rivet holes are "never going to be identical," allowed the jury to find the stepladder deviated from its intended design.

Hayes' testimony also supported a finding that the stepladder was unsafe to an extent beyond that contemplated by an ordinary user. Hayes opined that the leg broke while Tammy Ensley was engaging in normal use of the product, exposing her to serious injury. An ordinary user would not expect this result, especially in light of Hayes' testimony that minimizing the risk was feasible and cost effective.

In considering the question of what caused the fall, the jury was entitled to accept Hayes' approach rather than Quan's. One of the strengths of Hayes' opinion was the accident reconstruction methodology by which he determined

the stepladder broke before Tammy fell, not after. Tricam did not present a fall reconstruction analysis and therefore was unable to rebut this foundational conclusion by Hayes.

In challenging Hayes' testimony, Tricam relies on three federal cases in which the courts excluded expert testimony that stepladders from which the plaintiffs fell were defective: Maricco v. Meco Corp., No. 03-71719, 2004 WL 6081574 (E.D. Mich. Sept. 3, 2004) (court order); Heer v. Costco Wholesale Corp., 589 Fed. Appx. 854 (10th Cir. 2014); Mykolaitis v. Home Depot U.S.A., Inc., No. 13-1868 MLC, 2015 WL 4078111 (D.N.J. July 6, 2015) (unpublished).

The step stool in Heer was the same model as in the present case, designed and manufactured by Tricam. Heer, 589 Fed. Appx. at 856. In both Maricco and Heer, the expert proposed to testify that punching rivet holes in the tubular steel legs created stresses or weakness stresses in the tubular steel legs that ultimately caused the ladder to fail. Heer, 589 Fed. Appx. at 857; Maricco, at *1, *4.

In Maricco, the expert witness based his opinion entirely on his visual observation of the plaintiffs' step stool and his inspection and dissection of an exemplar step stool. The witness had "scant basis for his opinion on the important question of *why* this failure occurred." Maricco, at *5-*7. In Heer, the expert's report lacked "any discussion of tests, calculations, or industry standards, or the application of engineering principles" supporting the theory that a defect caused the plaintiff to fall, so that the court was left with only the expert's conclusory opinion that the step stool was defective. Heer, 589 Fed. Appx. at

857, 861. In Mykolaitis, the opinion was judged to be unreliable because the expert witness kept changing his theories. The court concluded that his explanation for the fall was "likely-this-but-could-be-that" and that he held no opinion "to a reasonable degree of scientific certainty." Mykolaitis, at *9.

Tricam contends the opinion offered by Hayes, like the opinions offered in the three federal cases, was impermissibly speculative and consequently did not provide substantial evidence to sustain the jury's finding that the stepladder contained a construction defect. Tricam also cites Davidson. In that case, a plaintiff's verdict was reversed on the basis that one of the expert witnesses—an accident reconstructionist—reached his opinion "by drawing inferences from facts not in evidence or by assuming facts actually conflicting with eyewitness testimony." Davidson, 43 Wn. App. at 575. Tricam contends Hayes ignored and contradicted uncontested data about the stepladder's strength.

Contrary to Tricam's assertion, Hayes did not ignore test results demonstrating that the stepladder conformed to applicable standards, normally performed well, and was capable of bearing weight exceeding Tammy's weight even when riddled with several unsmoothed holes. Hayes reviewed these test results and other case-specific testimony when preparing to testify. He explained to jurors that the tests were not relevant to his methodology of accident reconstruction and did not affect his ultimate conclusions. He noted that one "limitation" concerning the data discussed by Quan was "we can't test the leg of the Ensley stepstool that fractured. It's already fractured, it's already done. So we can't test it. We can't test the hole." He was aware that some stepladders

9

riddled with unsmoothed holes had functioned properly in testing, but he explained that those test results did not conclusively demonstrate that the *Ensleys'* stepladder was free of a construction defect.

Unlike the expert opinions challenged in Mykolaitis, Heer, Maricco, and Davidson, Hayes' testimony was not speculative, conclusory, or uncertain. His opinions were supported by the Ensleys' testimony about the circumstances of the accident and were stated to a reasonable degree of scientific certainty. Hayes employed a scientifically accepted methodology (accident reconstruction) and engaged in demonstrably thorough analysis. He gave fact-based opinion testimony helpful in understanding how an individual stepladder could fail during normal use even if its design met industry standards. The court did not err in admitting his testimony and allowing the jury to consider the construction defect claim.

Affirmed.

Becker, J.

WE CONCUR:

Dwyer, J.

Appelwick, J