FILED
United States Court of Appeals
Tenth Circuit

June 6, 2012

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

No. 11-1524

MANUEL SALVADOR AVITIA-
GUILLEN, a/k/a Robert Santini, a/k/a
Pete Ruiz, a/k/a Joe Ruiz Garcia, a/k/a
Robert Lopez, a/k/a Alfred Davila,

     Defendant-Appellant.

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLORADO
(D.C. No. 1:11-CR-00201-REB-1)**
_____

Before **ANDERSON** and **BALDOCK**, Circuit Judges, and **BRORBY**, Senior
Circuit Judge.[*]

_____

Raymond P. Moore, Federal Public Defender, and Barry A. Schwartz, Assistant Federal
Public Defender, Denver, Colorado, for Defendant Appellant.

John F. Walsh, United States Attorney, and Sergio Garcia, Special Assistant United
States Attorney, Denver, Colorado, for Plaintiff-Appellee.

_____

**BALDOCK**, Circuit Judge

_____

[*] After examining the parties' briefs and the appellate record, this panel has
determined unanimously that oral argument would not materially assist the determination
of this appeal. See Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument.

Defendant Manuel Avitia-Guillen, a citizen of Mexico, lawfully entered the United States in 1955. He obtained permanent resident status in 1988 but was deported in June 1996 after being convicted of an aggravated felony. Immigration and Customs Enforcement ("ICE") discovered Defendant in Denver, Colorado, in May 2011. A grand jury indicted Defendant with one count of being found in the United States after deportation, in violation of 8 U.S.C. § 1326(a) and (b)(2). At trial, the Government called a fingerprint examiner with the Colorado Bureau of Investigation (CBI), Wendy Bacchi, to testify that Defendant's fingerprints matched those on his 1996 deportation records. The Government laid the following foundation for Bacchi's testimony: Bacchi became a Fingerprint Examiner Intern with the CBI in 1999 after completing a semester-long fingerprint identification class at Pikes Peak Community College. In 2000, Bacchi was promoted to a full Fingerprint Examiner. About fifty percent of her time was devoted to fingerprint comparison, and she had examined "thousands" of fingerprints. She had previously qualified as a fingerprint comparison expert in state and federal courts.

Defense counsel then examined Bacchi, establishing that Bacchi had never been promoted to a "level 2 examiner," had not published any peer-reviewed articles on fingerprint examination, had not conducted any training to certify people as fingerprint examiners, was not qualified to examine latent fingerprints, and had not received any additional training since 2000. Defense counsel then objected to Bacchi's qualifications. The district court replied. "The objection is duly noted but respectfully overruled. This

is an area that involves scientific, technical or other specialized knowledge. The foundation has been laid that the witness by her training, education, background and experience is qualified to testify and opine as a fingerprint examiner." Trial Trans. vol. II at 343.

Bacchi proceeded to testify that Defendant's fingerprints taken upon his 2011 arrest matched the fingerprints taken during his removal proceedings in 1996. Defendant moved for a judgment of acquittal, but the district court denied the motion, and the jury returned a guilty verdict. The district court sentenced Defendant to the low end of the guideline range, 41 months' imprisonment. On appeal, Defendant argues the district court failed to make adequate findings of reliability with respect to Bacchi's testimony. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

The issue Defendant raises on appeal is extremely narrow. He does not renew his objection to Bacchi's qualifications as an expert witness, nor does he challenge the scientific reliability of fingerprint identification. Instead, he argues the district court erred "by failing to create an adequate record demonstrating that it satisfied its gatekeeping obligations."[1] Aplt.'s Br. at 18.

-----

[1] The record creates some confusion as to how long Bacchi had worked as a fingerprint analyst. At trial, which took place in July 2011, Bacchi stated she had been employed by the CBI for "[s]ixteen years." Trial Trans. vol. II at 333. When asked what positions she had held, she responded: "I was a Crime Data Specialist when I started my career there in '85. In '99 I was promoted to a Fingerprint Examiner Intern, and in 2000 I was promoted to a full Fingerprint Examiner." Id. Later, when asked how long she had been doing fingerprint work, she said, "Since 1989." Id. at 335. Yet a short time later she said she took the fingerprint class in "January through May of 1998." Defendant

Federal Rule of Evidence 702 requires a district court to assess proffered expert testimony to ensure it is both relevant and reliable. Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589 (1993) (scientific knowledge); Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999) (technical and other specialized knowledge). "[T]he district court generally must first determine whether the expert is qualified 'by knowledge, skill, experience, training, or education' to render an opinion." United States v. Nacchio, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc) (quoting Fed. R. Evid. 702). If the expert is sufficiently qualified, then "the court must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology." Id. Although a district court has discretion in how it performs its gatekeeping function, "when faced with a party's objection, [the court] must adequately demonstrate by specific findings on the record that it has performed its duty as gatekeeper." Goebel v. Denver & Rio Grande W. R.R. Co., 215 F.3d 1083, 1088 (10th Cir. 2000).

We review de novo whether the district court applied the proper standard in admitting expert testimony. United States v. Garcia, 635 F.3d 472, 476 (10th Cir. 2011). We also review de novo whether the court "actually performed its gatekeeper role in the first instance." United States v. Roach, 582 F.3d 1192, 1206 (10th Cir. 2009) (quoting Dodge v. Cotter Corp., 328 F.3d 1212, 1223 (10th Cir. 2003)). "If the district court

seizes on the 1989 date, arguing that Bacchi had received no additional training in "20-plus years" of fingerprint work. The Government describes Bacchi as "a fingerprint comparison examiner since 2000." In light of Bacchi's other testimony, the references to 1985 and 1989 were likely transcription errors and the correct years were actually 1995 and 1999. Ultimately, however, we need not resolve the confusion. Although it may be relevant to whether Bacchi was qualified as an expert, Defendant has not challenged her qualifications.

applied the correct legal standard, we then review the manner in which the court performed its gatekeeping role, deciding whether to admit or exclude testimony, for abuse of discretion." Garcia, 635 F.3d at 476. We reverse only if the district court's conclusion is "arbitrary, capricious, whimsical or manifestly unreasonable or when we are convinced that the district court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." Dodge, 328 F.3d at 1223 (internal quotation marks omitted). When a party fails entirely to object to expert testimony at or before trial, we review only for plain error. Macsenti v. Becker, 237 F.3d 1223, 1231 (10th Cir. 2001).

The sole question before us is whether the district court has "adequately demonstrate[d] by specific findings on the record that it has performed its duty as gatekeeper." Goebel, 215 F.3d at 1088. We review this question de novo. Although the question of whether the district court made adequate factual findings is not exactly the same question as whether it "actually performed its gatekeeper role in the first instance," Roach, 582 F.3d at 1206, they are practically indistinguishable for purposes of this case. We can only determine whether the district court fulfilled its gatekeeping obligation by looking at its findings. See Goebel, 215 F.3d at 1088 (observing that without specific findings, we cannot determine whether the district court properly fulfilled its gatekeeping obligation). Thus, to the extent Defendant preserved a challenge to the adequacy of the district court's findings, we review the issue de novo.[2]

---

[2] Our de novo review extends only so far, of course. It applies only to whether the district court "actually performed its gatekeeper role in the first instance." Dodge, 328

On appeal, Defendant argues the district court had a duty to make factual findings regarding both Bacchi's qualifications and her methodology. But Defendant did not object to Bacchi's methodology at trial. "When no objection is raised, district courts are not required to make 'explicit on-the-record rulings,'" because "we assume that the district court consistently and continually performed a trustworthiness analysis sub silentio of all evidence introduced at trial." Id. at 1088 n.2. (quoting Hoult v. Hoult, 57 F.3d 1, 5 (1st Cir. 1995)). Where a party objects only to an expert's qualifications, he does not preserve an objection to the expert's methodology. See United States v. Vargas, 471 F.3d 255, 263 (1st Cir. 2006) (where defendant objected to an expert's qualifications, but not his methods or the sufficiency of his data, an appellate court reviews these issues only for plain error); United States v. Diaz, 300 F.3d 66, 75–76 (1st Cir. 2002) (generic reference to Daubert while challenging expert's qualifications does not raise an objection to the expert's methodology). Thus, we review de novo only whether the district court "actually performed its gatekeeper role" with respect to Bacchi's qualifications. Roach, 582 F.3d at 1206. We review the court's factual findings with respect to Bacchi's methodology only for plain error. Goebel, 215 F.3d at 1088 n.2. Any other approach would fault the district court for failing to make findings on an issue Defendant did not raise.

A.

---

F.3d at 1223. To answer that question, we only need to ensure the district court actually applied Rule 702. Once we are satisfied the court did not abdicate its gatekeeping role, we apply the deferential abuse of discretion standard to its decision to admit or exclude testimony. Garcia, 635 F.3d at 476.

We turn first to whether the district court fulfilled its gatekeeping function regarding Bacchi's qualifications. In United States v. Velarde, 214 F.3d 1204, 1209 (10th Cir. 2000), we said a district court must make *some* findings regarding an expert's reliability. In Velarde, the Government called a doctor as an expert witness to testify about common symptoms in a child sexual abuse victim. Id. The doctor's testimony was of questionable reliability, and we had previously held similar testimony by the same doctor inadmissible in United States v. Charley, 189 F.3d 1251, 1266–68 (10th Cir. 1999). Despite an objection based on Kumho, the district court made "no reliability findings." Velarde, 214 F.3d at 1209. Recognizing that Daubert and Kumho give "great latitude" to district courts, we nevertheless said "the court must, on the record, make *some* kind of reliability determination." Id. We cited Justice Scalia's concurrence in Kumho, where he said, "I join the opinion of the Court, which makes clear that the discretion it endorses—trial-court discretion in choosing the manner of testing expert reliability—is not discretion to abandon the gatekeeping function." Kumho, 526 U.S. at 158–59 (Scalia, J., concurring). We concluded the district court abused its discretion by admitting the expert testimony without a reliability determination.[3] Velarde, 214 F.3d at

---

[3] At first glance, our holding in Velarde that the district court abused its discretion seems to conflict with our de novo standard of review. In our earlier cases, we held that admitting expert testimony without any findings regarding its reliability was an abuse of discretion. See Goebel, 215 F.3d at 1088 ("In the absence of such findings, we must conclude that the court abused its discretion in admitting such testimony."); United States v. Velarde, 214 F.3d 1204, 1211 (10th Cir. 2000) ("[H]aving failed to [make a reliability determination], the court abused its discretion when it admitted that testimony."). More recently, we have said we review de novo whether the court "actually performed its gatekeeper role in the first instance." Dodge, 328 F.3d at 1223. In Dodge, however, we nevertheless held the district court "abused its discretion" by admitting expert testimony

- 7 -

1211.

We again examined the adequacy of a district court's gatekeeper findings in Goebel. There, a doctor testified the plaintiff's brain injury resulted from exposure to train locomotive fumes combined with the effects of high elevation. Id. at 1086. The district court did not conduct a Daubert hearing and made no findings regarding the reliability of the expert's testimony, despite three separate objections by the defendant. Id. at 1086–87. The extent of the district court's on-the-record findings was its statement that "I believe there is sufficient foundation here for the jury to hear this testimony." Id. at 1087. We said the gatekeeping function requires "a sufficiently developed record in order to allow a determination of whether the district court properly applied the relevant law." Id. at 1088 (quoting United States v. Nichols, 169 F.3d 1255, 1262 (10th Cir. 1999)). But we could find "not a single explicit statement on the record to indicate that the district court ever conducted any form of Daubert analysis whatsoever." Id. We clarified that a district court need not "recite the Daubert standard as though it were some magical incantation." Id. (quoting Ancho v. Pentek Corp., 157 F.3d 512, 518 (7th Cir. 1998)). Nor need it "apply all of the reliability factors suggested in Daubert and

without performing its gatekeeper function. Id. at 1225. In Roach, we said the court "erroneously admitted . . . testimony without the required findings of reliability." Roach, 582 F.3d at 1207. Roach gave perhaps the most accurate statement of the law after Dodge. The apparent inconsistency in Dodge itself is probably illusory. When a district court neglects its gatekeeping function, it commits two errors. First, it commits error, reviewable de novo, by not making a reliability determination. Second, it abuses its discretion when it *admits* the expert testimony without a reliability determination. These errors are really two sides of the same coin, and our conclusion that the district courts in Velarde, Goebel, and Dodge abused their discretion is consistent with the application of de novo review to such cases.

- 8 -

Kumho." Id. But it must at least demonstrate it has performed its duty as gatekeeper. Id. We concluded the district court abused its discretion in admitting the doctor's testimony, and we ultimately remanded for a new trial. Id. at 1089.

In Roach, a police officer gave expert testimony regarding common practices of Crips gang members such as carrying firearms, using certain slang terms, and using blue porch lights. Roach, 582 F.3d at 1199. The defendant objected to the officer's expert credentials several times, but the district court overruled the objections. After one objection, the court instructed the jury as follows: "Technical or other specialized knowledge may assist the jury in understanding the evidence and determining the facts in issue. A witness who has knowledge and experience or training and education may testify and state an opinion concerning such matters." Id. Later, when the defendant objected to another portion of the officer's testimony, the court said, "I've determined that the jury may consider [the officer] as an expert and give [his expert testimony] such consideration as they [sic] deem appropriate." Id. We said the court's statements "simply do not include any factual findings indicating the basis of the court's determination that [the officer] met the requirements of Rule 702. A conclusory statement that the court has made such a determination will not suffice." Id. at 1207. We concluded the court "erroneously admitted [the officer's] testimony without the required finding of reliability." Id. We held, however, that the admission of the testimony was harmless error, because other evidence sufficiently supported an inference the defendant was a gang member. Id. at 1208.

What, then, is required to "adequately demonstrate by specific findings on the

record that [the district court] has performed its duty as gatekeeper"? Goebel, 215 F.3d at 1088. The answer, according to Velarde, Goebel, and Roach, is at least "*some* kind of reliability determination." Velarde, 214 F.3d at 1209. In Nacchio, we determined the district court made "a sufficiently developed record, a concrete reliability determination, and specific findings and discussion." Nacchio, 555 F.3d at 1256. There, the district court excluded expert testimony after discussing its inadmissibility under "a number of rationales." Id. at 1239. But we have never addressed exactly how extensive admissibility findings must be. The key inquiry is whether the appellate court can determine whether the district court "properly applied the relevant law." Nichols, 169 F.3d at 1262. See also Geobel, 215 F.3d at 1988 (considering the district court's findings an "insufficient basis for appellate review"). Here, the relevant law is Rule 702, which allows an expert witness to testify if she is "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. The district court gave ample evidence it was applying the Rule 702 standard. The court said Bacchi was qualified to testify as a fingerprint examiner based on her "training, education, background and experience." Trial Trans. vol. II at 343. So the record is sufficient to demonstrate the district court applied the relevant law.

This case differs from Goebel, where the district court did not show on the record it had exercised its gatekeeping function. Here, the district court specifically recited the standard it was applying—Rule 702. Additionally, Goebel involved a challenge to an expert's methodology in a complicated area of medical science. This case involves an expert's qualifications to testify to a commonly used method of identification. Defendant

- 10 -

argues the district court was required to "carefully and meticulously review the proffered scientific evidence." Goebel, 215 F.3d 1088 (quoting United States v. Call, 129 F.3d 1402, 1405 (10th Cir. 1997)) (alteration omitted). But, once again, Defendant never challenged Bacchi's methodology, but only her qualifications. So Goebel has little relevance here. The other cases Defendant cites also suffer from this dissimilarity. See Dodge, 328 F.3d at 1225–26 ("reluctantly conclude[ing]" the district court had made insufficient findings regarding an expert's reasoning and methodology); Velarde, 214 F.3d at 1209 n.3 (noting the defendant did not challenge the doctor's "credentials, expertise, or qualifications to testify as an expert").

This case is more similar to Roach, which involved a challenge to an expert's "credentials," rather than his methodology. Roach, 582 F.3d at 1199. As in Roach, the court here admitted the testimony with only a brief explanation. But the explanations differ in an important respect. In Roach, the district court explained Rule 702 to the jury, saying, "A witness who has knowledge and experience or training and education may testify and state an opinion concerning such matters." Id. This tells us nothing about the court's determination that a specific witness was qualified. Later, the court said it had "determined that the jury may consider him as an expert." Id. This, however, says nothing about the court's "*basis* of [its] determination." Id. at 1207 (emphasis added). The record did not contain "*any* factual findings indicating the basis of the court's determination" regarding this specific witness's qualifications under Rule 702. Id. (emphasis added). Here, by contrast, the district court explained it found Bacchi "qualified to testify and opine as a fingerprint examiner" based on "her training,

- 11 -

education, background, and experience." Trial Trans. vol. II at 343. We recognize these findings were very brief. In some cases, particularly when dealing with an expert's methodology, we might require more extensive factual findings. But these findings adequately demonstrate the district court did, in fact, "perform[] its duty as gatekeeper." Goebel, 215 F.3d at 1088. If Defendant had challenged the district court's decision to qualify Bacchi as an expert, we would have been presented with a sufficient record to determine whether the court "properly applied the relevant law." Nichols, 169 F.3d at 1262.

Defendant would have us expand Roach, which requires at least *some* factual findings, and require a district court to "justify, support, or expound on its conclusion." Aplt.'s Br. at 19. He argues the district court needed to say "considerably more" about the foundation for Bacchi's testimony. Id. at 20. But our cases do not require district courts to extensively explain their reliability determinations, especially with regard to an expert's qualifications. Defendant would have us order a new trial simply so the district court could elaborate for a few more sentences on its determination that Bacchi qualified as an expert witness. Such an elaboration would in no way further our appellate review. The record is already sufficient for us to determine the basis for the court's ruling, and consequently provides a "sufficient basis for appellate review." Goebel, 215 F.3d at 1088. Roach does not require a remand simply because the district judge was not given to verbosity, and we decline to adopt such a rule today.

B.

The only remaining question is whether the district court neglected its gatekeeping

function with respect to Bacchi's methodology, an argument Defendant urges on appeal. As mentioned above, our review on this issue is only for plain error. Macsenti, 237 F.3d at 1231. When a party fails to object to an expert's methodology, the district court need not make explicit findings. Goebel, 215 F.3d at 1088 n.2. So we are left to look only for some obvious error in the court's implicit finding that Bacchi's methods were reliable. The district court heard Bacchi describe her method of comparing fingerprint cards. Fingerprint comparison is a well-established method of identifying persons, and one we have upheld against a Daubert challenge. United States v. Baines, 573 F.3d 979, 990–91 (10th Cir. 2009) (noting "[f]ingerprint identification has been used extensively by law enforcement agencies all over the world for almost a century," has an "impressively low" error rate, and has achieved "overwhelming acceptance" by experts in the field). Defendant has pointed to nothing in the record indicating Bacchi deviated from normal, reliable fingerprint comparison methods. So the district court did not plainly err in its implicit determination that Bacchi's testimony was based on "reliable principles and methods" that were "reliably applied." Fed. R. Evid. 702(c), (d).

AFFIRMED.