**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

**November 23, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

RONNIE FISCHER, individually,

     Plaintiff - Appellant,

v.

BMW OF NORTH AMERICA, LLC, a
Delaware company,

     Defendant - Appellee.

No. 20-1399
(D.C. No. 1:18-CV-00120-PAB-MEH)
(D. Colorado)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **McHUGH**, and **MORITZ**, Circuit Judges.
_____

Plaintiff-appellant Ronnie Fischer[1] was injured while changing the front tire of a

vehicle manufactured by Bayerische Motoren Werke Aktiengesellschaft ("BMW AG"), a

parent corporation of defendant-appellee BMW of North America, L.L.C. ("BMW").

Mr. Fischer sued BMW, alleging products liability, negligence, and breach of warranty

_____

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and
Tenth Circuit Rule 32.1.

[1] Mr. Fischer represented himself before the district court and continues to do so
on appeal. He is a licensed attorney, however, so his pleadings are not entitled to a liberal
construction. *See Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001) ("While we are
generally obliged to construe pro se pleadings liberally, we decline to do so here because
Smith is a licensed attorney." (citations omitted)).

claims. Mr. Fischer designated Dr. Aaron Lalley, a licensed professional mechanical engineer, as his liability expert. BMW moved to exclude several of Dr. Lalley's opinions. After granting the motion to exclude, the district court granted BMW's motion for summary judgment on all of Mr. Fischer's claims. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.    BACKGROUND

In January 2016, Mr. Fischer attempted to change a flat tire on a 2003 BMW sedan in Denver, Colorado. Mr. Fischer had reviewed the portions of the vehicle's owner's manual that provided instructions for changing the vehicle's tires. Based on the manual, he understood he was to place the vehicle in park and apply the parking brake. Then, he was to place the jack that came with the vehicle into the integrated jacking point. Mr. Fischer believes he followed these instructions as he used the jack to raise the front-right portion of the vehicle. Mr. Fischer then removed the flat tire and placed the spare tire on the wheel hub. While he was tightening the lug bolt on the spare tire, the vehicle fell off the jack. The vehicle suddenly dropped down and pinned his middle finger between the asphalt and the lug wrench, crushing and severing a portion of his finger.

Mr. Fischer sued BMW, alleging products liability, negligence, and breach of warranty claims. After Mr. Fischer designated Dr. Lalley as his liability expert, BMW moved under Federal Rule of Evidence 702 to exclude several of Dr. Lalley's opinions. Three of these disputed opinions are at issue in this appeal. First, Dr. Lalley stated the BMW jack had a design defect that rendered it unstable compared to other jacks (the

2

"Instability Opinion"). Second, Dr. Lalley believed the design defect caused the jack to fail and the vehicle to fall, injuring Mr. Fischer (the "Causation Opinion"). Third, Dr. Lalley surmised BMW's jack designers compromised safety in the interest of cost reduction or space requirements (the "Intent Opinion").

The United States District Court for the District of Colorado granted BMW's motion to exclude these opinions. BMW then moved for summary judgment, arguing Mr. Fischer could not succeed on any of his claims given the inadmissibility of Dr. Lalley's expert testimony. In resolving BMW's motion, the district court explained that "[e]ach of [Mr. Fischer's] claims—strict liability, negligence, and breach of warranties—requires [him] to prove a design defect." App. Vol. 4 at 68. "Because [Mr. Fischer's] sole liability expert's opinions concerning a design defect have been excluded," and because Mr. Fischer "fail[ed] to identify any other evidence which might support a finding of a design defect," the district court held Mr. Fischer lacked evidence on an essential element of his claims and could not survive BMW's summary judgment motion. *Id.* at 69. The district court then granted BMW's motion. Mr. Fischer appealed.

## II.    DISCUSSION

On appeal, Mr. Fischer argues the district court (1) failed to perform its gatekeeping function, as required under Federal Rule of Evidence 702; (2) abused its discretion in excluding three of Dr. Lalley's disputed opinions; and (3) erred in granting BMW summary judgment because the district court's summary judgment decision was premised on its improper exclusion of Dr. Lalley's opinions. We turn to these issues now.

3

### A.  *Gatekeeping Analysis*

An expert witness must be qualified by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702(a). Further, the expert's testimony must be helpful to the trier of fact, "based on sufficient facts," and the result of "reliable principles and methods." *Id.* 702(b). Accordingly, district courts have a "gatekeeper obligation" to ensure all expert testimony admitted is both relevant and reliable. *Schulenberg v. BNSF Ry. Co.*, 911 F.3d 1276, 1282 (10th Cir. 2018); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593–95 (1993).

We review de novo "whether the district court actually performed its gatekeeper role in the first instance." *Schulenberg*, 911 F.3d at 1282 (quotation marks omitted). To do so, we look to "whether the district court carefully and meticulously review[ed] the proffered scientific evidence or simply made an off-the-cuff decision to admit the expert testimony." *Goebel v. Denver & Rio Grande W. Ry. Co.*, 215 F.3d 1083, 1088 (10th Cir. 2000) (alteration in original) (quotation marks omitted). Thus, to perform its gatekeeping role, the district court must make specific findings on the record so that this court can determine if it carefully reviewed the objected-to expert testimony under the correct standards. *Adamscheck v. Am. Fam. Mut. Ins. Co.*, 818 F.3d 576, 586 (10th Cir. 2016).

The district court satisfied its obligations here. In its seventeen-page decision, the district court: thoroughly evaluated Dr. Lalley's report; set forth the relevant standards under Rule 702 and *Daubert* that governed its analysis; applied these standards to evaluate Dr. Lalley's methodology and qualifications with respect to the opinions BMW

sought to exclude; and provided clear and abundant support for its decision to exclude these opinions.

Mr. Fischer disagrees, arguing the district court did not perform its gatekeeping function because it failed to "fully consider the record." Aplt. Br. at 9. He takes specific issue with the court excluding the Instability Opinion after finding it was not based on sufficient facts. We first describe the methodology underlying Dr. Lalley's Instability Opinion before affirming the district court's decision to exclude it.

In his expert report, Dr. Lalley opined that the "primary flaw" in BMW's jack design is that "[t]he force and displacement required" for the jack to tip over "is approximately half of typical designs." App. Vol. 1 at 30. The report includes a chart showing a "[c]omparison of calculated tipping force" between the BMW jack and the jacks associated with Pontiac and Ford vehicles. *Id.* at 34. According to this chart, the lateral force required to tip over the BMW jack is 121.1 pounds, whereas the force required to tip over the Pontiac and Ford jacks is 292.3 pounds and 209.6 pounds, respectively.

Dr. Lalley derives these figures from a formula he claims measures the force required to tip a jack. He states: "resistance to tipping is a torque calculated by multiplying the weight of the vehicle that is supported by the jack and the effective lever arm upon which the force is acting. The effective lever arm is one half of the jack base width plus one half of the platform width." *Id.* at 32. He also states "[t]he torque upon the jack that is causing the jack to tip can be calculated similarly. The effective lever arm causing the jack to tip is the total height of the jack. . . . The critical point for tipping is

5

the point at which the torque causing rotation equals the torque resisting rotation." *Id.*

Dr. Lalley estimated the weight on the respective jack to be 1,000 pounds. The district

court excluded the Instability Opinion after noting that Dr. Lalley "does not explain . . .

figures [used in his formula] – e.g., the '[e]stimated weight on jack' of 1,000 pounds."

App. Vol. 4 at 51 (alteration in original) (quoting App. Vol. 1 at 34).

Mr. Fischer claims the factual basis for Dr. Lalley's use of 1,000 pounds was

contained elsewhere in the record and was understood by the parties "to be representative

of one-fourth of the weight of the car."[2] Aplt. Br. at 10. But even if true, a district court

satisfies its gatekeeping function when it "carefully and meticulously review[s] *the*

*proffered scientific evidence* [rather than] simply ma[king] an off-the-cuff decision to

admit the expert testimony." *Goebel*, 215 F.3d at 1088 (emphasis added). That is, a

district court must carefully examine the *expert opinion* being proffered to determine

whether it is admissible under Rule 702. A district court is not obligated to scour the

entire record to try to make sense of the expert opinion.

Here, the district court correctly observed that Dr. Lalley's report used a formula

involving 1,000 pounds as the estimated weight on the jack, and that the report failed to

explain from where Dr. Lalley drew that number. *See* App. Vol. 1 at 34 (using 1,000

pounds as the estimated weight on the jack); *see generally id.* at 30–41 (entire expert

---

[2] In support, Mr. Fischer cites (1) his response before the district court in opposition to BMW's motion to exclude, which acknowledges Dr. Lalley used 4,000 pounds for the vehicle's weight; and (2) BMW's rebuttal expert's report, which states "Dr. Lalley uses an estimated weight on the jack of 1,000 lbs., or one-fourth of an estimated 4,000 lbs. vehicle weight." App. Vol. 1 at 146.

report, in which 1,000-pound figure is never explained). Nowhere does Dr. Lalley's

expert report mention that he uses 4,000 pounds as the estimated weight of the entire

vehicle, and his rebuttal report also fails to provide clarity on this point. Nor does the

parties' apparent understanding of this figure salvage Mr. Fischer's argument. The

district court's gatekeeping function requires it to assure *itself* that Dr. Lalley's report was

admissible under Rule 702, and the court was unable to do so based on the reports before

it. We are therefore satisfied the district court fulfilled its gatekeeping responsibility.

### B.   *Exclusion Analysis*

If "the district court fulfilled its gatekeeping responsibility, [w]e then review the

trial court's actual application of the standard in deciding whether to admit or exclude an

expert's testimony for abuse of discretion." *Schulenberg*, 911 F.3d at 1282 (alteration in

original) (quotation marks omitted). "We must afford *substantial deference* to the district

court's application of *Daubert*." *Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1216 (10th

Cir. 2016) (emphasis in original) (internal quotation marks omitted). "The trial court's

broad discretion applies both in deciding how to assess an expert's reliability, including

what procedures to utilize in making that assessment, as well as in making the ultimate

determination of reliability." *Id*. "We reverse only if the district court's conclusion is

arbitrary, capricious, whimsical or manifestly unreasonable or when we are convinced

that the district court made a clear error of judgment or exceeded the bounds of

permissible choice in the circumstances." *United States v. Avitia-Guillen*, 680 F.3d 1253,

1256 (10th Cir. 2012) (internal quotation marks omitted). Mr. Fischer argues the district

court abused its discretion by excluding the Instability, Causation, and Intent Opinions. We turn to these now.

1. **Instability Opinion**

The district court excluded the Instability Opinion because (1) Dr. Lalley failed to explain the figures he used in applying his tipping-force formula—specifically, the estimated weight variable, discussed *supra*; and (2) Dr. Lalley did "not establish that his formula constitutes a reliable methodology for determining the tipping point." App. Vol. 4 at 51. We affirm the first point for the same reason Mr. Fischer's gatekeeping argument fails; Dr. Lalley's report did not explain the source of his estimated weight variable. The district court was therefore unable to conclude for itself that the Instability Opinion was factually supported, meaning its decision to exclude the opinion was not arbitrary or manifestly unreasonable. *See Avitia-Guillen*, 680 F.3d at 1256.

We also affirm the district court's second point. The district court must evaluate proffered expert opinions for reliability, which "calls for a 'preliminary assessment of whether [1] the reasoning or methodology underlying the testimony is scientifically valid and . . . [2] that reasoning or methodology properly can be applied to the facts in issue.'" *Etherton*, 829 F.3d at 1217 (quoting *Daubert*, 509 U.S. at 592–93). The Supreme Court in *Daubert* set forth a checklist for trial courts to consider when assessing the reliability of scientific expert testimony. The five factors are: (1) whether the expert's technique or theory can be or has been tested; (2) whether the technique or theory has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and

(5) whether the technique or theory has been generally accepted in the scientific community. *Daubert*, 509 U.S. at 593–95. These factors are non-exclusive, and the district court may therefore properly consider other relevant information. *See id.* at 593 ("Many factors will bear on the inquiry, and we do not presume to set out a definitive checklist or test.").

Here, Dr. Lalley's methodology lacks indicia of reliability. Dr. Lalley provides no evidence that his tipping-force formula is scientifically valid. Indeed, the district court observed that Dr. Lalley "cite[d] no independent information that his formula is appropriate for measuring the stability of car jacks, is standard or accepted by experts in the automotive industry, or has any reliable, scientific basis as applied to jacks of this type". App. Vol. 4 at 51. Dr. Lalley also cites nothing to show that his formula was peer-reviewed or published, has a low error rate, or satisfies any of the relevant factors set forth in *Daubert*.[3] Further, Dr. Lalley did not test to confirm his predicted results or otherwise demonstrate the reliability of his calculations. Although the district court acknowledged that Mr. Fischer "is correct that 'testing is not always required to satisfy the reliability threshold of Rule 702,'" it found "that testing of a theory or calculation is

---

[3] Mr. Fischer's attempt to reframe Dr. Lalley's report as supported by the *Daubert* factors is unavailing. For example, Mr. Fischer notes that "Dr. Lalley explains in his report that 'elements of the design process is [sic] very similar for most mechanical engineering projects'" and that "there are agencies that develop standards to maximize this uniformity." Aplt. Br. at 16 (quoting App. Vol. 1 at 43). He further explains that one of these agencies is the International Organization for Standards ("ISO")—an agency under which BMW is certified and with which Dr. Lalley is familiar. *Id.* (citing App. Vol. 1 at 43). As the district court explained, however, "Dr. Lalley does not indicate what these standards are or how they apply to this case." Appl. Vol. 4 at 51–52 n.3.

particularly important when the expert has provided no supporting evidence demonstrating the basis or reliability of his calculations." App. Vol. 4 at 53 (quoting *Heer v. Costco Wholesale Corp.*, 589 F. App'x 854, 862 (10th Cir. 2014) (unpublished)). Where Dr. Lalley offered his formula without any support for its reliability or acceptance in the scientific community, the district court did not exceed its discretion in finding that the lack of testing weighed against its admissibility.

As the district court noted, Mr. Fischer argues the Instability Opinion was reliable because it was based on "general engineering concepts" and "me[t] the standard for acceptable methodology by written calculations in support of his opinion." App. Vol. IV at 51–52 (quoting App. Vol. 2 at 79–80). Specifically, he claims that Dr. Lalley "discusses in his report . . . the concept of torque, the interplay of force and weight causing rotation, and how it causes the tipping point to be reached." Aplt. Br. at 13; *see also id.* at 13–15 (discussing specific portions of Dr. Lalley's report that discuss these concepts). He notes that "torque is [a] well[-]known scientific principle," that "[t]here is no dispute that a tip over point for the vehicle jack exists," and that Dr. Lalley's report defines the tipping point for the jack as "'the point at which the torque causing rotation equals the torque resisting rotation.'" *Id.* at 15–16 (quoting App. Vol. 1 at 32).

Simply noting a tipping point can be calculated with reasonable certainty, however, does not mean Dr. Lalley's specific formula and calculations for doing so are reliable. Again, Dr. Lalley provides no evidence connecting his formula to the scientific concepts he highlights. The district court, therefore, could not say how these general engineering concepts support the figures Dr. Lalley used to calculate the torque-causing

rotation or the torque-resisting rotation in this case. *See General Elec. Co. v. Joiner*, 522

U.S. 136, 146 (1997) (noting that in some cases a trial court "may conclude that there is

simply too great an analytical gap between the data and the opinion proffered"). The

district court thus did not abuse its discretion by rejecting Dr. Lalley's and Mr. Fischer's

untethered invocations of "physics" and "mathematical principles" as sufficient to

establish the reliability of the Instability Opinion under Rule 702.[4]

2.  **Causation Opinion**

The district court also excluded Dr. Lalley's Causation Opinion—i.e., his opinion

that the design defect caused the jack to fail and the vehicle to fall. The parties agree that

if the district court did not abuse its discretion in excluding Dr. Lalley's Instability

Opinion, then it did not abuse its discretion in excluding the Causation Opinion. *See* Oral

Arg. at 3:01–3:25 (counsel for Mr. Fischer conceding this point). That is, Mr. Fischer's

challenge to the district court's exclusion of Dr. Lalley's Causation Opinion is predicated

on the success of his challenge to the district court's exclusion of the Instability Opinion.

*See* Aplt. Br. at 19 (arguing only that a "finding that the [d]istrict [c]ourt *abused its*

---

[4] Mr. Fischer's citations to out-of-circuit cases that purportedly contravene the district court's holding here are immaterial. These cases do not bind this court, and moreover, the mere fact that one district court admitted an expert under analogous circumstances does not render the district court's decision to exclude Dr. Lalley's opinion here an abuse of discretion. "We must afford substantial deference to the district court's application of Daubert." *Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1216 (10th Cir. 2016) (emphasis and internal quotation marks omitted). And "[w]hen applying Rule 702, different courts relying on essentially the same science may reach different results, but we could still affirm both decisions due to our deferential standard of review." *Id.* at 1217 (internal quotation marks omitted).

*discretion with respect to excluding* Dr. Lalley's [Instability Opinion] . . . would also mean that the [d]istrict [c]ourt abused its discretion" with respect to his Causation Opinion) (emphasis added). Because we affirm the district court's exclusion of the Instability Opinion, we also affirm its exclusion of the Causation Opinion.

3. **Intent Opinion**

The district court also excluded Dr. Lalley's Intent Opinion—i.e., his opinion that BMW's jack designers "compromised safety in the interest of cost reduction or space requirements." App. Vol. 4 at 56 (quoting App. Vol. 1 at 30). It reached this result after finding Dr. Lalley was not qualified to testify on BMW's intent. *See id.* at 57 (observing "courts generally exclude expert testimony that directly attempts to state a corporate defendant's state of mind" because "expert opinions on the intent, motives, or states of mind of corporations have no basis in any relevant body of knowledge of expertise" (alterations and quotations marks omitted)).

On appeal, Mr. Fischer does not argue the district court abused its discretion by excluding Dr. Lalley's opinions concerning BMW's intent.[5] *See* Aplt. Br. at 20 (stating Mr. Fischer "does not appeal" the district court's exclusion of "Dr. Lalley's opinions about intent"). He instead argues the district court's exclusion of the Intent Opinion was broad enough to encompass Dr. Lalley's thoughts on general product design, which he claims "are proper[ly] based on Dr. Lalley's qualifications." *Id*. For example, Mr. Fischer

---

[5] Accordingly, we do not reach this issue. *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below.").

asserts Dr. Lalley is qualified to offer the following opinion from his rebuttal report: "[o]ptimization of cost, weight and space are common engineering practice. Often optimization represents a compromise between factors. Weight and cost are very commonly simultaneously optimized in a compromise." *Id.* (quoting App. Vol. 1 at 46).

But the record does not suggest the district court excluded that opinion—or any other opinions about general product design. The district court's ruling was narrow. After finding Mr. Fischer "has not met his burden of demonstrating that Dr. Lalley is qualified to testify as to the *intent* of the jack designers," the district court stated, "Dr. Lalley is not qualified to opine *on defendant's intent*." App. Vol. 4 at 57 (emphasis added). As a result, the district court specifically held that "*this* opinion will be excluded." *Id.* (emphasis added). The singular opinion the district court excluded was Dr. Lalley's view about why BMW designed the jack as it did, not whether the design represented an engineering tradeoff between weight, cost, or other factors.

Nothing in the district court's ruling suggests it also excluded Dr. Lalley's opinions that did *not* involve BMW's intent, motivation, or state of mind. This conclusion is further buttressed by BMW's actual motion to exclude, which never asked the court to prohibit Dr. Lalley's thoughts on general product design. *See* App. Vol. 1 at 15–16 & n.3, 23–24 (requesting only that the district court exclude Dr. Lalley's "Opinion re Intent Underlying Design"). Accordingly, we need not affirm or reverse the district court on this issue because Mr. Fischer disputes a ruling the district court never made.

### C.   *Summary Judgment Analysis*

Summary judgment is warranted when the movant is entitled to "judgment as a matter of law" in the absence of a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). We review the district court's entry of summary judgment de novo, "applying the same standard for summary judgment that applied in district court." *Sandoval v. Unum Life Ins. Co. of Am.*, 952 F.3d 1233, 1236 (10th Cir. 2020). We view the evidence and draw all reasonable inferences in favor of the non-movant—Mr. Fischer. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Mr. Fischer argues that, because the district court's grant of summary judgment was predicated on its decision to exclude several of Dr. Lalley's opinions, reversing its decision as to any of those opinions warrants reversing summary judgment. Mr. Fischer does not suggest, however, that if the district court's exclusion decision was proper, there is any basis to disturb the district court's summary judgment decision. Because we affirm the exclusion of each of the three disputed opinions, we affirm the district court's summary judgment decision.

## III.     CONCLUSION

For these reasons, we AFFIRM the district court's order.[6]

Entered for the Court

Carolyn B. McHugh
Circuit Judge

---

[6] This court has also been asked to grant a motion for leave to file an amicus brief by the Lawyers for Civil Justice ("LCJ"). In deciding whether to grant an amicus's motion to submit a brief, courts consider, among other factors, "whether the proposed amicus is a disinterested entity." *United States v. Bd. of Cnty. Comm'rs of the Cnty. of Otero*, 184 F. Supp. 3d 1097, 1115 (D.N.M. 2015) (quoting *Ass'n of Am. Sch. Paper Suppliers v. United States*, 683 F. Supp. 2d 1326, 1328 (Ct. Int'l Trade 2010)), *aff'd* 843 F.3d 1208 (10th Cir. 2016). Here, LCJ states its interest is that it is a national coalition of corporations, defense trial lawyer organizations, and law firms whose "primary purpose is to advocate for fairness and balance in the administration of civil justice, . . . [including] through the filing of amicus curiae in briefs in cases involving the interpretation and application of rules to issues in civil litigation." LCJ Mot. at 2. The amicus brief's author—Lee Mickus—served as BMW's counsel earlier in this litigation, though he has since withdrawn. *See* Entry of Appearance and Cert. of Interested Parties (Nov. 10, 2020), at 2 (noting Mr. Mickus "appeared for [BMW] at various times during the underlying District Court litigation proceeding" but has since "withdrawn as counsel of record"). Mr. Mickus should have disclosed his prior involvement in this litigation, and we reject the motion given that prior involvement.