41 Mass. App. Ct. 643                                   643

Mohamed Bin Bandar Mohamed Bin Abdul Rahman Al Saud *v.* Fast Forward, Inc.

MOHAMED BIN BANDAR MOHAMED BIN ABDUL RAHMAN AL
SAUD *vs.* FAST FORWARD, INC., & another.[1]

No. 94-P-2066.

Plymouth. May 6, 1996. - November 18, 1996.

Present: BROWN, PERRETTA, & FLANNERY, JJ.

*Sale,* Transfer of ownership. *Motor Vehicle,* Sale, Certificate of origin. *Evidence,* Business record, Relevancy and materiality. *Uniform Commercial Code,* Good faith, Sale of goods. *Practice, Civil,* Instructions to jury. *Consumer Protection Act,* Damages, Attorney's fees.

At the trial of a civil action the judge correctly excluded as evidence, on the ground that the plaintiff was unfairly surprised, certain business records that defense counsel had failed to produce during discovery or during the trial. [647-648]

At the trial of a civil action, the judge correctly admitted certain documents and testimony in evidence which were relevant to primary issues at trial. [648-649]

Error, if any, at a civil trial in the presentation and argument of certain evidence was rendered harmless by the judge's accurate and complete instruction to the jury on the issue. [649]

Evidence at a civil trial was sufficient to warrant the denial of the defendants' motion for directed verdicts, judgments notwithstanding the verdicts, a new trial, and remittitur and supported the judge's findings on a claim under G. L. c. 93A, including an assessment of multiple damages. [649-650]

CIVIL ACTION commenced in the Superior Court Department on March 2, 1990.

The case was tried before *Robert L. Steadman,* J., and postjudgment motions were heard by him.

*Thomas Arthur Hensley* for the defendants.

*Stephen Gordon* (*Kenneth E. Chase,* of Arizona, & *Roberta Fitzsimmons,* with him) for the plaintiff.

---

[1]Russell Stoehr, the president of Fast Forward, Inc., from 1988 to 1993, as well as its treasurer and director from 1990 to 1993.

PERRETTA, J. After the jury returned a verdict against Fast Forward, Inc. (Fast), on the plaintiff's complaint for conversion of his four luxury automobiles, the trial judge turned to the count brought under G. L. c. 93A, which he had reserved for decision. Finding that Fast and its principal, Russell Stoehr, had used false documentation to transfer ownership of the vehicles and that they "knew or reasonably should have known that their outrageous and irresponsible conduct in dealing with the plaintiff's vehicles was offensive to the consuming public as well as public policy and a wilful attempt to profit at the risk of both the plaintiff and the consumer," the trial judge awarded double damages and attorney's fees.[2] On appeal, Fast and Stoehr raise numerous issues concerning the trial judge's rulings on the evidence, post-judgment motions, and the c. 93A complaint. We affirm the judgment.

1. *The evidence.* There was evidence to show that the plaintiff, Prince Mohamed, a member of the Saudi royal family, maintains residences in the States of Washington and Arizona. In 1985 and 1986, he imported four automobiles which he had purchased in Saudi Arabia into the United States to his residence in Washington. Those vehicles were described as follows: (1) a 1985 Ferrari Testarossa; (2) a 1987 Aston Martin Volante; (3) a 1983 Aston Martin Lagonda; and (4) a 1987 Lamborghini LM002. The plaintiff's name was inscribed on a brass plate affixed to the door jamb of several of the vehicles.

Because the automobiles did not enter the United States through customary channels, from foreign manufacturers to American distributors, they were referred to as "grey market" vehicles. As such, they were required to be "federalized," that is, brought into conformity with the safety and emissions standards established by the United States Environmental Protection Agency and the United States Department of Transportation. In 1988, the plaintiff arranged through his business manager, David Sakahara, to ship the vehicles to Hilton Pereira in Connecticut. Pereira, who had been recommended to the plaintiff by a friend and who had previously overseen such work on a Ferrari 412I for the plaintiff, was to

---

[2]Although the jury, in response to special questions, specifically found that Stoehr did not convert the plaintiff's automobiles, the trial judge found him "individually" liable under c. 93A.

coordinate the necessary federalization work on the vehicles. When the vehicles were shipped to Pereira, they had either Saudi or Italian registration plates, which was an indication that the automobiles were not new and were registered to an owner.[3]

Pereira, who was not licensed as either an automobile broker or dealer in Massachusetts or Connecticut, in turn transferred the vehicles to Fast, situated in West Bridgewater, through Stoehr, without the plaintiff's authorization or knowledge. Fast did not receive either a certificate of origin or a certificate of title for any of the four vehicles.[4] The failure to present a certificate of either type for each of the vehicles would put an experienced dealer in domestic and foreign automobiles, such as Fast and Stoehr, on notice that Pereira was not the legal owner of the vehicles.

There were records from Fast, all of a dubious and discredited nature, showing that the four vehicles had been sold without proper ownership documentation; that is, ownership was purportedly transferred to Fast and buyers from Fast with either bills of sale from Pereira or forged certificates of origin purchased for $500 each by Fast and Stoehr from an individual from New Jersey named Matthew Visconte.

When the plaintiff saw in an automobile magazine an advertisement for the sale of a Ferrari Testarossa which looked very much like his, he realized something was amiss. He hired a private investigator and, ultimately, was able to regain possession, with a court order, of his Aston Martin Lagonda and Lamborghini LM002. The Aston Martin Volante was located and, as of the time of trial, was being transferred back to Fast for its return to the plaintiff. The plaintiff has not recovered the Ferrari Testarossa which was

---

[3]There was evidence to show that the appropriate foreign registration authorities issued the plaintiff the necessary title and registration documentation for the vehicles prior to his shipment of them to the United States.

[4]As explained by the plaintiff's witness, a title review officer for the Registry of Motor Vehicles, a certificate of origin is a pretitle document issued only by manufacturers for new automobiles. The certificate is issued to the dealer or the dealer's bank at the time of delivery of the vehicle to the dealer. When the vehicle is sold, the dealer gives the certificate of origin to the buyer who, in turn, takes it to the appropriate registration authority, which, after examination for authenticity, retains it while issuing a certificate of title and registration to the owner.

646                                41 Mass. App. Ct. 643

Mohamed Bin Bandar Mohamed Bin Abdul Rahman Al Saud *v.* Fast Forward, Inc.

sold to an individual by the buyer who purchased it from Fast. That individual apparently shipped the vehicle out of the country.

On this evidence, the jury found, in response to special questions put to them pursuant to Mass.R.Civ.P. 49(a), 365 Mass. 812 (1974), that the plaintiff was the owner of the vehicles in dispute, that Fast had converted those vehicles, that the plaintiff had entrusted those vehicles to Pereira who was not a merchant dealing with merchandise of the type involved in the instant case, that, in dealing with Pereira, Fast and Stoehr were neither buyers in the ordinary course of business of any of the vehicles nor good faith purchasers for value, and that the plaintiff was entitled to damages from Fast in the amount of $430,000.

Although the trial judge accepted the jury's determination as to the amount of damages, his finding of a violation of G. L. c. 93A was not based simply upon their finding that Fast had converted the plaintiff's vehicles. Rather, the trial judge found that Fast *and* Stoehr knowingly purchased counterfeit certificates of origin, which they used to transfer title to two of the plaintiff's vehicles with the intent of depriving him of his property and deceiving those buyers whom they intended would rely on the forged certificates. It is that conduct upon which the trial judge concluded that an award of double damages against Fast and Stoehr, individually, was warranted.[5]

2. *Theory of defense.* In defending against the plaintiff's claims, the defendants rely upon G. L. c. 106, § 2-403(2). That statute, as inserted by St. 1957, c. 765, § 1, provides: "Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business." It is the defendants' position that they purchased the vehicles from a merchant, Pereira, to whom they had been entrusted by the plaintiff and that they did so in good faith.[6]

As earlier noted, the jury found that Pereira was not a

---

[5]Specifically, judgment entered against Fast in the amount of $860,000, plus interest, and against Stoehr in the amount of $860,000, "without interest."

[6]As defined in relevant part by G. L. c. 106, § 2-104, as inserted by St. 1957, c. 765, § 1, " 'Merchant' means a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge

merchant and that the defendants were neither buyers in the ordinary course of business nor good faith purchasers for value. There being no dispute that the plaintiff entrusted his automobiles to Pereira, most of the issues raised by the defendants on appeal pertain to evidence of their good faith and whether Pereira was a merchant.

3. *Evidence of prior dealings with Pereira.* During his direct examination, Stoehr testified that, prior to his dealings with Pereira in respect to the four vehicles in question, Fast had purchased twenty-five automobiles from Pereira. This testimony, to which there was no objection, was relevant to the issues of Pereira's merchant status and the defendants' good faith. The plaintiff's cross-examination of Stoehr was based, in part, upon the belief that Fast had no records or other documents of these prior dealings. That belief was reasonable in light of the fact that the plaintiff had requested that all documents pertaining to Pereira be produced at the deposition of a Fast employee. The records were not produced because, as explained at the time of the deposition, the scope of the subpoena comprehended seven or eight years of business records and presented retrieval problems.

There the matter stood until redirect of Stoehr, when the defendants sought to introduce business records of Fast's twenty-five prior transactions with Pereira. Claiming a "bushwack," the plaintiff objected to the introduction of the records on the basis of the defendants' failure to produce them, as requested, during discovery. The trial judge sustained the objection and noted during argument at side bar that defense counsel had the documents in his possession and in the courtroom since, at least, the day before during his questioning of Stoehr about the twenty-five prior sales and that notwithstanding the continuing duty to produce those records imposed by Mass.R.Civ.P. 26(2), 365 Mass. 776 (1974), counsel had failed to hand the records over to the plaintiff.

On appeal, the defendants argue that the trial judge's exclu-

---

or skill peculiar to the practices or goods involved in the transaction. . . ." See also *Ferragamo* v. *Massachusetts Bay Transp. Authy.*, 395 Mass. 581, 586-587 (1985). A buyer in ordinary course of business as described in pertinent part in G. L. c. 106, § 1-201(9), as inserted by St. 1957, c. 765, § 1, is a "person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind . . . ."

sion of the evidence was a Draconian sanction, particularly in view of the plaintiff's failure during discovery to seek an order compelling compliance with the request for the records. See Mass.R.Civ.P. 37, 365 Mass. 797 (1974). The argument overlooks the basis of the exclusion. In light of the facts that the plaintiff claimed and explained his surprise and that, without turning the disputed records in their possession and in the courtroom over to the plaintiff, the defendants elicited testimony about the twenty-five sales, we conclude that the trial judge acted well within his discretion in excluding the records from evidence.[7] See *DiBiase* v. *Rowley*, 33 Mass. App. Ct. 928, 929 (1992), citing *Cassano* v. *Gogos,* 20 Mass. App. Ct. 348, 355 (1985).

4. *The certificates of origin.* Little needs be said concerning the defendants' contention that the trial judge erred in allowing in evidence the two certificates of origin purchased by Fast and Stoehr from a man in New Jersey. We begin by noting that many of the factual assertions set out in the defendants' brief concerning Saudi customs in respect to excusing members of the royal family from the requirement of having certificates of origin are made without references to the eight-volume record appendix. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). Further, upon our review of the record, we were unable to find any evidence to support the assertions.

Putting aside all factual statements for which there is no record support, we think it obvious that, contrary to the defendants' claim, the certificates of origin were relevant to the issue of the defendants' good faith. See *E.A. Miller, Inc.* v. *South Shore Bank*, 405 Mass. 95, 100-101 (1989). The certificates being relevant to a primary issue in the trial, we conclude that the trial judge did not abuse his discretion in determining that the probative value of the evidence outweighed any possible prejudice. See *Commonwealth* v. *Medeiros*, 395 Mass. 336, 352 (1985); *McEvoy Travel Bureau, Inc.* v. *Norton Co.*, 408 Mass. 704, 714-715 (1990).

Our conclusion is equally applicable to the defendants' same argument in respect to the testimony of the comptroller

---

[7]Although the records were excluded from evidence, the jury was allowed to consider Stoehr's testimony concerning the prior sales. Because the plaintiff took no objection to that testimony, the trial judge refused the plaintiff's motion to strike it.

of Ferrari North America, Inc., the exclusive importer and distributor of Ferrari automobiles in the United States. His testimony showed that Matthew Visconte, the individual from whom the certificates of origin were obtained, was neither a Ferrari employee nor a person authorized by Ferrari to issue certificates of origin. He further testified to the falsity of other information set out in the certificates. The relevance of the evidence is, again, obvious.

5. *Pereira's lack of license.* Throughout the trial, the plaintiff was allowed to argue and present evidence of the fact that Pereira was not licensed as an automobile dealer or broker in either Connecticut or Massachusetts. The defendants contend that the argument was improper and the evidence irrelevant as one need not be licensed to be a merchant for purposes of G. L. c. 106, § 2-403. See *Heinrich* v. *Titus-Will Sales, Inc.,* 73 Wash. App. 147 (1994). Arguing that the evidence could have led the jury to believe that one needed to be licensed to be a merchant, they claim prejudicial error. We pass over the issue of whether the trial judge's ruling on relevancy was within his discretion and conclude that any error was made harmless by his instructions to the jury:

> "[I]n order to be a dealer or in order to be a broker in automobiles, a person must be licensed by the Commonwealth of Massachusetts or the State of Connecticut, and those exhibits are before you.
>
> "A merchant, however, need not be a dealer or a broker to be a merchant under the Uniform Code. You may, however, consider, as evidence in the case, the evidence of licensing on the issue of whether or not someone is a broker, but one of the important things you must bear in memory is that it's not necessary that a merchant be licensed under the Commonwealth of Massachusetts or, indeed, under the laws of Connecticut, as I understand those laws to be. But you may, however, consider that evidence."

The defendants make no argument concerning the accuracy or the sufficiency of this instruction.

6. *Sufficiency of the evidence.* Discussion of the defendants' arguments concerning their motions for directed verdicts,

judgments notwithstanding the verdicts, a new trial, and remittitur, as well as their complaints about the trial judge's findings of fact on the c. 93A claim is unwarranted. It is enough to state that their contentions are based upon their view of the evidence, which they take in a light most favorable to themselves. But see *McNamara* v. *Honeyman*, 406 Mass. 43, 45-46 (1989); *Foster* v. *The Loft, Inc.*, 26 Mass. App. Ct. 289, 292 (1988), and cases therein cited. As for the appropriateness of multiple damages, see *Kansallis Fin. Ltd.* v. *Fern*, 421 Mass. 659, 672-673 (1996), and *Shaw* v. *Rodman Ford Truck Center, Inc.*, 19 Mass. App. Ct. 709, 711-712 (1985).

7. *Attorney's fees for the appeal.* Upon the plaintiff's submission of those materials described in *Yorke Mgmt.* v. *Castro*, 406 Mass. 17, 20 (1989), his request for fees for this appeal will be considered favorably.

*Judgment affirmed.*

*Orders denying postjudgment motions affirmed.*