SUPERIOR COURT 
 
 JOHN W. BALDWIN, JR., ROBERT N. BALDWIN, JAMES R. BALDWIN, AND JOHN E. BALDWIN v. THOMAS P. CONNOR, JR., MARIA H. CONNOR, JOHN J. CONNOR, II, NICHOLAS KOURTIS, POLYVINYL FILMS, INC., AND INDUSOL, INC.

 
 Docket:
 1984CV03396-BLS2
 
 
 Dates:
 February 19, 2025
 
 
 Present:
 Kenneth W. Salinger
 
 
 County:
 SUFFOLK
 

 
 Keywords:
 DECISION AND ORDERS ON MOTIONS IN LIMINE
 
 

 After the Court’s decision in March 2024 on the parties’ cross-motions for summary judgment, and its subsequent clarification of that decision in May 2024, the only claims that remain to be tried are the claims by John W. Baldwin, Jr., Robert N. Baldwin, James R. Baldwin, and John E. Baldwin (the “Baldwins”) that: (1) Thomas and Maria Connor (the “Connors”) breached their fiduciary duties by freezing the Baldwins out of their management and employment positions at Polyvinyl Films, Inc. and Indusol, Inc. (the “Companies”; (2) Nicholas Kourtis aided and abetted the Connors’ alleged breaches of fiduciary duty; and (3) the Connors and Kourtis engaged in a civil conspiracy to freeze out and oppress the Baldwins in violation of the Connors’ fiduciary duties.   A non-jury trial of these remaining claims is scheduled to begin March 3, 2025.
During the final trial conference held yesterday, the Court heard oral argument from both sides on the parties’ motions in limine. The Court ruled or rules as follows on these motions.
1. Defendants’ Motions in Limine.
1.1. MIL 1 re Appraisal Rights and Magnitude Offer (docket no. 249). Defendants seek to bar any evidence regarding the Connors’ failure to offer appraisal rights to the plaintiff Baldwins, or regarding the offer by Magnitude to purchase the assets of Polyvinyl Films, Inc.
1.1.1. Facts Already Established. In its summary judgment decision, the Court explained in some detail the material facts that exist without substantial controversy concerning the May 13, 2019, votes to adopt restated articles of organization for both Companies, and the Companies’ failure to provide the Baldwins with notice that these amendments triggered their statutory appraisal rights under G.L. c. 156D, §§ 13.01 et seq.
 
                                                            -1-
 
It also recounted, in § 2.1.1 of the summary judgment decision, the basic facts about Magnitude’s offer in April 2019 to purchase Polyvinyl’s assets, which again appear to be undisputed.
The Court exercises its discretion under Mass. R. Civ. P. 56(d) to deem that these facts have been established. This motion is therefore allowed in part to the extent that it seeks to exclude cumulative evidence about these essentially undisputed facts.
1.1.2. Other Appraisal Rights Evidence. This motion is allowed in part to the extent that it seeks to bar presentation of additional evidence about alleged efforts temporarily to conceal the May 2019 votes that triggered the Baldwins’ appraisal rights. The Baldwins contend that such evidence is “relevant as evidence of the Defendants’ motive and plan to freeze-out the Baldwins.” In the exercise of its discretion, the Court finds that such evidence would have limited probative value, and that this probative value would be outweighed by the risk of unfair prejudice to the Defendants from the presentation of “prior bad acts” evidence.
This motion is also allowed in part to the extent that it seeks to exclude any evidence of damages flowing from the Connors’ breach of fiduciary duty by denying the Baldwins their statutory appraisal rights.
In its prior summary judgment ruling, the Court crafted an equitable remedy to ensure that the Baldwins are made whole for the loss of their appraisal rights. The Court also explained that if this remedy is carried out, and the Companies pay the Baldwins the full amounts required under this remedy, then that would moot the Connors’ breach of fiduciary duty by not offering the appraisal rights. If the Companies failed to do so, then the Baldwins could collect any unpaid amounts from the Connors. In either case, no additional evidence of alleged damages is needed or relevant.
This motion is denied in part to the extent that it seeks to exclude any evidence as to whether Kourtis may be held jointly liable, on a theory of civil conspiracy or on theory of aiding and abetting the Connors’ breach of fiduciary duty, for the Connors’ failure to offer the Baldwins their appraisal rights. These claims must still be decided. If Kourtis is found to be jointly and severally liable with the Connors for denying the Baldwins their statutory appraisal rights, and the Companies fail to pay all amounts due if the Baldwins choose to exercise their appraisal rights, then the Baldwins could seek to recover from Kourtis.
 
                                                            -2-
 
1.1.3. Other Magnitude Offer Evidence. This motion is allowed in part to the extent that it seeks to bar evidence of the Magnitude offer, other than the basic facts recounted in the summary judgment decision, because the Court granted summary judgment in the Connors’ favor on this aspect of the Baldwins’ claims. Though the Baldwins contend that additional evidence that they were not told about the Magnitude offer somehow would “show the Defendants’ motive, intent, preparation and plan for their [alleged] freeze-out of the Baldwins,” the Court finds that such evidence would have limited probative value that would be outweighed by the unfair prejudice to Defendants of the admission of “prior bad acts” evidence.
1.2. MIL 2 re Operating Costs (docket no. 253). Defendants’ motion to bar the Baldwins from seeking to recover costs incurred to run Polyvinyl is allowed.
The Baldwins make clear in their written Opposition that, given the Court’s summary judgment rulings, they no longer seek to recover any payments to employees or consultants who provided services to Polyvinyl, and no longer seek to recover damages for decreases in the value of their equity interests in Polyvinyl.
The Baldwins arguments that they should be entitled to present evidence that the Connors should have to repay to the Companies any legal fees incurred to defend the decision not to offer the Baldwins their appraisal rights, or that Nicholas Kourtis should have to repay any amounts advanced by the Companies to pay any of his legal fees, are without merit.
The corrected third amended complaint, which is the operative pleading in this case, does not assert any claim that the Connors breached their fiduciary duties by retaining lawyers to defend the Companies against the declaratory judgment claim regarding whether the Baldwins’ statutory appraisal rights had been triggered. Nor does it assert any claim that the Connors breached their fiduciary duties by honoring Polyvinyl’s duty under its articles of organization to pay Kourtis’s legal defense costs.[1]
Since the Baldwins have not asserted any claim that the Connors acted unlawfully in arranging for the Companies to retain counsel to defend
 
--------------------------------------------
 
[1] Any claim that Kourtis may have to repay part or all of his legal fees to the Companies if he is not “wholly successful” in defending himself in this action is not ripe, and therefore not surprisingly was not made part of the third- amended complaint.
 
                                                            -3-
 
themselves in this action, or in causing the Companies to pay Kourtis’s legal fees, they may not seek to recover any part of those legal expenses as damages, either on their own behalf or on behalf of the Companies.
During oral argument, the Baldwins noted that their third amended complaint (I) states that the Baldwins “bring this action directly, and to the extent appropriate derivatively for the benefit of the Companies,” and (ii) alleges in Counts I, II, and III that the Baldwins and the Companies were injured by Defendants’ alleged wrongdoing.
That is beside the point.
When the Baldwins sought leave to file their third amended complaint, they pointed out (in their reply memorandum) that the revised pleading would not add any new theories of liability, but instead would “simply ensure that the Court has a procedural mechanism to award damages should it find that the claims already contained in the [Second Amended Complaint] must be addressed through derivative rather than direct relief.”
Since the Baldwins did not add allegations to their complaint asserting that causing the Companies to incur legal fees or to pay Kourtis’s legal fees was a breach of fiduciary duty, they may not seek to recover any part of such fees as damages in this case.
1.3. MIL 3 re Health Insurance Costs (docket no. 256). Defendants’ motion to bar the Baldwins from offering any evidence about the cost of their health insurance is also allowed. The Baldwins do not dispute that they failed to produce documentation sufficient to show what health insurance coverage they have purchased since they stopped working for Polyvinyl, or to show what they paid for that coverage.
Having failed to produce the requested documentation, the Baldwins may not testify or present other evidence about their claimed health insurance costs. Cf. Mohamed v. Fast Forward, Inc., 41 Mass. App. Ct. 643, 647–648 (1996) (affirming exclusion of business records not produced during discovery); DiBiase v. Town of Rowley, 33 Mass. App. Ct. 928, 929 (1992) (affirming exclusion of alternate development plan that was not produced during discovery, but instead provided on first day of trial).
1.4. MIL 4 re Plaintiffs’ Attorneys’ Fees (docket no. 259). As the Court explained during the final trial conference, it has allowed Defendants’ motion to exclude evidence regarding attorneys’ fees incurred by the Baldwins because
 
                                                            -4-
 
those costs are not recoverable in this case. As discussed above, the third amended complaint does not state any claim that the Connors injured the Companies through an alleged breach of fiduciary duty. Instead, the Baldwins only seek relief directly for their own benefit. As a result, the Baldwins may not seek an award of attorneys’ fees either as legal damages or as part of an equitable remedy. See Tocci v. Tocci, 490 Mass. 1, 2–3, 22–23 (2022).
1.5. MIL 5 re Expert Opinions (docket no. 263). Defendants seek to exclude all of the expert opinions of Robert Stankus that were disclosed by the Baldwins in their “Supplemental Expert Witness Disclosure” on October 21, 2024.
Under Massachusetts common-law rules of evidence, the proponent of expert opinion testimony “must establish five foundational requirements before expert testimony will be admitted:” (1) the expert testimony will assist the trier of fact; (2) the witness is qualified as expert in the relevant area of inquiry; (3) the expert’s opinions are based on facts or data reasonably relied upon by experts in the relevant field (4) the process or theory underlying the opinion is reliable; and (5) the process or theory is applied to facts of case in reliable manner. See Commonwealth v. Barbosa, 457 Mass. 773, 783 (2010).
“Trial judges have broad discretion in deciding whether to admit expert testimony.” Commonwealth v. Fitzpatrick, 463 Mass. 581, 603 (2012). In the exercise of its discretion, the Court rules as follows with respect to each of the challenged opinions.
1.5.1. Opinions 1 and 2 re Kourtis’s Compensation: The Baldwins have offered Mr. Stankus’s conclusions as to the total amounts that the Companies paid Mr. Kourtis through 2023 as a summary of voluminous underlying business records.
A summary of voluminous business records is independently admissible, even if compiled by someone without personal knowledge of the underlying records. See Commonwealth v. Greenberg, 339 Mass. 557, 581–582 (1959) (where a “great mass of books and documents were put in evidence” at trial, “concise statements of their content verified by persons who had prepared them from the originals were the only means for presenting … an intelligible view of the issues involved”); Mass. Guide to Evid. § 1006 (“The proponent may use a summary, chart, or the like to prove the content of voluminous writings or records that cannot be conveniently examined in court.”).
 
                                                            -5-
 
However, the Baldwins have not shown how the compensation that the Companies paid to Kourtis is relevant to any issue in this case. The request to bar Mr. Stankus’s summary of this information is therefore allowed.
1.5.2. Opinions 3 and 4 re the Companies’ and Kourtis’s Legal Fees: As discussed above, the third amended complaint does not include any claim that the Connors breached their fiduciary duties by causing the Companies to hire counsel to defend against the declaratory judgment claim or by causing Polyvinyl to pay Kourtis’s legal defense costs. It follows that Mr. Stankus’s summaries of the amounts paid to counsel representing the Companies or Mr. Kourtis are not relevant. The request to exclude Mr. Stankus’s summaries of this information is therefore allowed.
1.5.3. Opinions 5 and 6 re the Connors’ Compensation: The Baldwins have also not shown how the compensation that the Companies paid to the Connors is relevant to any remaining issue in this case. The request to bar Mr. Stankus’s summary of this information is therefore allowed.
1.5.4. Opinion 7 re Employees and Consultants: The Baldwins have made clear that they no longer seek to recover any payments to employees or consultants who provided services to Polyvinyl. And they have not shown that the amount of such payments is otherwise relevant to any remaining issue. The request to bar Mr. Stankus’s summary of this information is therefore allowed.
1.5.5. Opinions 8 and 9 re the Baldwins’ Past Compensation: Mr. Stankus has tried to summarize the total amount of wages and profit-sharing amounts that were actually paid to each of the Baldwins. Defendants argue that there is no need for Mr. Stankus to testify as to these amounts because they are not in dispute. That remains to be seen.
If the parties enter into a stipulation as to the total amounts of wages and profit sharing that have been paid to each of the Baldwins, then there will be no need for the Baldwins to present any further evidence on the topic.
Absent such a stipulation, the Court will permit the Baldwins to seek to elicit from Mr. Stankus testimony summarizing the voluminous documentation that shows the amounts of these pages. This motion is therefore denied in part with respect to Mr. Stankus’s summary of past payments that have actually been made by the Companies to the Baldwins.
1.5.6. Opinions 8 and 9 re Claimed Lost Compensation: In contrast, this motion is allowed in part to the extent that Defendants seek to exclude Mr.
 
                                                            -6-
Stankus’s opinions as to additional compensation that the Baldwins would have earned through April 2024 if they had continued to work for the Companies, and as to the present value of future lost wages and future lost profit-sharing benefits claimed by the Baldwins.
Mr. Stankus provided no explanation for how he derived these figures. For example, he did not provide spreadsheets showing his assumptions for annual future payments that would have been made to the Baldwins if they have continued to work for the companies through age 75, or explain in any way how he calculated a present value for his presumed stream of future payments.
The Baldwins had the burden of proving that Mr. Stankus’s opinions had some foundation other than “the ipse dixit [or say-so] of the expert.”[2] Commonwealth v. Hinds, 487 Mass. 212, 228 (2021), quoting General Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997). They failed to do so. Where, as here, the proponent of expert testimony fails to explain the basis for the witness’s proposed opinions, then it has not met its burden of showing that the opinions have a reliable basis. Id.
The Baldwins’ argument that Defendants were obligated to raise any challenge to the sufficiency of the disclosure as to these opinions far earlier is without merit. Defendants were entitled to rely upon and hold the Baldwins to the expert opinions they disclosed. To the extent that those opinions have no discernable basis, they are inadmissible. The burden was on the Baldwins to fully disclose their proposed expert testimony.
“[A] judge has broad discretion to admit or exclude ‘expert testimony when the proponent has not given proper notice of ... the subject matter of the expert's anticipated testimony, either in his answers to interrogatories or in his supplementary responses.’ ” Kace v. Liang, 472 Mass. 630, 637 (2015), quoting Elias v. Suran, 35 Mass. App. Ct. 7, 10 (1993).
In the exercise of its discretion, the Court will exclude Mr. Stankus’s opinions as to allegedly lost past and future compensation because he failed to disclose any basis for those opinions. See, e.g., Barron v. Fidelity Magellan Fund, 57 Mass.
 
--------------------------------------------
 
[2] “ ‘Ipse dixit’ is Latin for ‘He, himself, said it,’ and is used to identify an unsupported statement that rests solely on the authority of the person who makes it.” Heer v. Costco Wholesale Corp., 589 Fed.Appx. 854, 861 n.4 (10th Cir. 2014), quoting Black’s Law Dictionary 905 (9th ed. 2009). “Generally speaking, an ipse dixit is ‘something asserted but not proved.’ ” United States v. Alabama Power Co., 730 F.3d 1278, 1288 n.1 (11th Cir. 2013) (Hodges, D.J., dissenting), quoting Black’s Law Dictionary, supra.
 
                                                            -7-
 
App. Ct. 507, 519–520 (2003) (affirming exclusion of expert opinion due to failure adequately to disclose basis).
1.5.7. Opinion 10 re Health Insurance Costs: The request to bar Mr. Stankus from offering any opinion as to the Baldwins’ past or future health insurance costs is also allowed.
The Baldwins did not articulate any opposition to this part of this motion. To the contrary, they stated in their written opposition that the Baldwins “will not be presenting Mr. Stankus’ opinion as to the Plaintiffs’ lost health care costs; Plaintiffs will directly provide that evidence.”[3]
In any case, the supplemental disclosure says that Mr. Stankus’s opinions as to past and future health insurance costs “are based on information provided by the Baldwins about their cost of health insurance.” Though parties may ask a witness to summarize and tabulate data that is spread across voluminous documentation, as discussed above, they may not ask their expert to do nothing more than parrot what they have been told by their client.
Finally, to the extent that Opinion 10 is actually based on Mr. Stankus’s own calculation and conclusions, the Baldwins have failed to provide any explanation for how Stankus derived these figures. As discussed above, the ipse dixit of an expert is not an adequate basis for an expert opinion.
1.5.8. Opinion 11 re the Baldwins’ Legal Fees: The request to bar Mr. Stankus’s opinion as to the total amount of legal fees incurred by the Baldwins through May 2024 is allowed. As discussed in § 1.4 above, the Baldwins are not entitled to recover any part of their legal fees.
1.5.9. Lost Profits Opinion: Finally, the Court will reserve until trial the question of whether to admit Mr. Stankus’s analysis of increased profits that the Baldwins contend they could have generated if they had continued to manage Polyvinyl.
Defendants point out that Stankus relies heavily on what Robert Baldwin told him about alleged plans to increase production capacity. That just means that the Baldwins will need to lay a proper foundation for Stankus’s assumptions
 
--------------------------------------------
 
[3] As discussed in § 1.3 above, the Court will bar the Baldwins from presenting such evidence themselves because they failed to produce requested documentation as to their actual health insurance coverage and costs.
 
                                                            -8-
 
through the testimony of Robert Baldwin, or otherwise, before seeking to offer Stankus’s lost profit opinions.
The Court will keep an open mind about whether this issue and Defendants’ other criticisms about Mr. Stankus go to the admissibility of this opinion testimony or, instead, to what weight if any the Court should give that testimony. But the Court cannot resolve these issues based on the limited information that has been provided to it. It will instead consider and rule upon any objection to questions asking Mr. Stankus to voice a lost profits opinion in context during the trial.
2. Plaintiffs’ Motions in Limine.
2.1. Evidence that the Baldwins Were Removed Due to Mismanagement (docket no. 243). The Baldwins seek to bar evidence or argument that they mismanaged the Companies before May 2019. The Court denied this motion for the reasons stated on the record at the final trial conference. The Court’s prior ruling on summary judgment that any counterclaim for damages caused by the Baldwins’ alleged mismanagement of the Companies was waived by acquiescence did not resolve whether the Baldwins’ freeze-out claim fails because the Connors were entitled to remove the Baldwins for alleged mismanagement.
2.2. Testimony as to Plant Improvements (docket no. 246). The Court will reserve until trial any ruling on whether the alleged inability of Polyvinyl’s 30(b)(6) witness to answer particular questions about past and planned plant improvements should preclude the Defendants from testifying, or presenting testimony by any other Polyvinyl officer or employee, about those issues.
2.3. Rebuttal Expert Opinions (docket no. 237). The Baldwins seek to exclude all of the expert opinions that were disclosed by the Defendants on July 8, 2024, in the “Expert Disclosure & Rebuttal Report” of Christopher Reece. In the exercise of its discretion, the Court rules as follows with respect to each of the challenged opinions.
2.3.1. Mitigation of Damages. This motion is denied in part to the extent that it seeks to exclude proffered evidence that the Baldwins failed to mitigate their damages after they were allegedly forced out of their jobs at Polyvinyl.
The Baldwins argue that requiring a minority shareholder who has been frozen out of a closely-held corporation to mitigate damages is inconsistent with the principle that “[t]he proper remedy for a freeze-out is ‘to restore [the minority
 
                                                            -9-
 
shareholder] as nearly as possible to the position [they] would have been in had there been no wrongdoing.’ ” Brodie v. Jordan, 447 Mass. 866, 870 (2006), quoting Zimmerman v. Bogoff, 402 Mass. 650, 661 (1988). But they have not pointed to a single appellate decision holding that a successful plaintiff in a minority freeze-out case has no duty to mitigate their damages from being deprived of employment or compensation.
This argument is without merit.
The general measure of damages is the same for breach of contract as for breach of fiduciary duty; under either theory, a prevailing claimant is entitled to be put in the position they would have been in if there had been no breach of duty. See, e.g., Mailman’s Steam Carpet Cleaning Corp. v. Lizotte, 415 Mass. 865, 869 (1993) (breach of contract); Berish v. Bornstein, 437 Mass. 242, 270 (2002) (breach of fiduciary duty).
“The duty to mitigate damages unquestionably applies to a breach of contract action involving a claim for consequential damages.” Global Investors Agent Corp. v. Nat'l Fire Ins. Co. of Hartford, 76 Mass. App. Ct. 812, 825 (2010). As the Supreme Judicial Court has reiterated, “[i]t is a well-established rule that ‘[w]here one is under contract for personal service, and is discharged, it becomes his duty to dispose of his time in a reasonable way, so as to obtain as large compensation as possible, and to use honest, earnest and intelligent efforts to this end. He cannot voluntarily remain idle and expect to recover the compensation stipulated in the contract from the other party.’ ” Sheriff of Suffolk Cnty. v. Jail Officers & Emps. of Suffolk Cnty., 465 Mass. 584, 589 (2013) (holding that trial judge erred in ruling that dismissed employee had no duty to mitigate damages), quoting Maynard v. Royal Worcester Corset Co., 200 Mass. 1, 6 (1908).
There is no reason why the duty to mitigate would not apply equally to a claim for breach of fiduciary duty, where the measure of damages is the same.
Similarly, an employee who has been wrongfully fired in violation of a non- contractual duty also has a “duty to mitigate her damages by reasonable efforts to secure other employment.” DaPrato v.  Massachusetts  Water  Res.  Auth.,  482 Mass. 375, 397 (2019) (retaliatory termination in violation of Family and Medical Leave Act and Americans with Disabilities Act), quoting Haddad v. Wal-Mart Stores, Inc., 455 Mass. 91, 102 (2009) (termination of employment based on gender in violation of G.L. c. 151B, § 4). There is no reason why an employee that is fired in violation of an antidiscrimination statute must
 
                                                            -10-
 
mitigate their damages but an employee that is fired in violation of majority shareholder’s fiduciary duties does not.
Finally, the Court concludes that the Baldwins’ other critiques of Mr. Reece’s mitigation opinions do not go to admissibility, but instead go to whether the Court should credit and give any weight to those opinions.
2.3.2. Whether the Baldwins Were Overcompensated. This motion is allowed in part to the extent it seeks to exclude any opinion that the Baldwins were overcompensated from 2015 to 2019. The Court previously granted summary judgment in the Baldwins’ favor on the Connor’s counterclaim that the Baldwins mismanaged the Companies in the years leading up to their May 2019 resignations. This part of Mr. Reece’s opinions does not appear to be relevant to any issue that remains to be decided in this case. The Court exercises its discretion to exclude this opinion because it will not assist the Court in deciding any of the remaining claims or issues. See, e.g., Goldhor v. Hampshire College, 25 Mass. App. Ct. 716, 723 (1988) (upholding exclusion of expert testimony that would not assist jury).
2.3.3. Whether Polyvinyl’s Management Structure Was “Abnormal.” This motion is also allowed in part to the extent it seeks to exclude any opinion that Polyvinyl’s management structure “would be considered extremely unusual and abnormal based on ‘best practices.’ ” First, this is not a proper rebuttal opinion because it does not respond in any way to an expert opinion that was previously disclosed by the Baldwins. The scheduling order in this case did not permit the disclosure of new, non-responsive expert opinions as part of the later disclosure of “rebuttal” opinions. Second, in any case, this opinion would not assist the Court in deciding any of the remaining claims or issues.
2.4. Unemployment Claims (docket no. 240). The parties agreed that Plaintiffs’ motion to exclude any evidence regarding unemployment claims is moot and that the Court need not decide it.